HARDY, Judge.
Plaintiff provoked this eoncursus proceeding for the purpose of procuring judicial pronouncement as to ■ the rights of the several defendants in and to certain accrued royalties in the sum of $140.31 derived from the production of gas from plaintiff’s well located in Section 36, Township 16 North, Range 7 West, Bienville Parish, Louisiana. The defendants, who are claiming interests in the royalties, as hereinafter more specifically set forth, are Walter L. George, the Oil Investments, Inc., and Polly Davis, joined by her husband, John Davis, Sr.
The defendant, George answered plaintiff’s petition and prayed for judgment declaring him to be the owner of one-half of the minerals in and to the property involved, and to the sums and proceeds due and to become due therefrom.
Defendant, Oil Investments, Inc., also answered arid prayed to be recognized as the owner of one-fourth interest in the *501 minerals and to one-half of all royalties accrued or which might in future become due and payable.
Defendant, Polly Davis, and her husband, John Davis, Sr., answered plaintiff’s ■petition and prayed for judgment sustaining a plea of prescription of ten years li-berandi causa, ordering the cancellation of •certain instruments and rights thereunder specifically described, and further .judgment recognizing the defendant, Polly Davis, as the owner of the entire sum here involved.
During, trial, which 'Consisted principally ■of the introduction of a mass of documentary evidence on behalf of the several parties involved in the litigation, the attempt was made on behalf of the Davis defendants to introduce parol evidence for the purpose of explaining an instrument executed between Polly Davis and her husband and the plaintiff, Placid Oil Company. Timely objection was made on behalf of the other defendants and the objection was sustained by the District Judge. Thereafter the distinguished Judge of the District Court rendered a written opinion in which he set forth detailed reasons for reversing his ruling, and, as a consequence, ordered the case re-opened for the purpose of admitting the testimony 'which had theretofore ibeen excluded.
Upon re-opening of the case the Davis defendants tendered parol testimony with respect to the instrument, which will be more particularly hereinafter set forth, which testimony, over the objection of the other defendants, was received. The case then being closed, the District Judge, on the basis of a written opinion on the merits, gave judgment in favor of the Davis defendants.
Before formal judgment was signed, on proper petition, C. B. Davis, Administrator ■of the Succession of Polly Davis, was made ■party deiendant in the place and stead of •the said Polly Davis, deceased.
The judgment sustained the plea of prescription liberandi causa, which had been filed by the Davis defendants, ordered the •cancellation of certain instruments therein .described, and further dec; oed the ownership of the sum of money deposited by plaintiff in the custody of the Court to be vested in C. B. Davis, Administrator of the Succession of Polly Davis, and John Davis, Sr./ in' equal proportions. From this judgment the defendants, George and Oil Investments, Inc., have .appealed.
The facts are almost entirely .without dispute. By instrument dated the 12th day of February, 1916, and 'duly recorded in the records of Bienville Parish, Louisiana, Polly Davis, wife of John Davis, purchased five acres in a square in the southeast corner of the Southeast Quarter of Southeast Quarter of Section 36, Township 16 North, Range 7 West. By instrument dated the 4th day of December, 1916, Polly Davis, wife of John Davis, purchased the Southeast Quarter of Southeast Quarter of Section 36, Township 16 North, Range 7 West, less five acres in the Southeast corner. The answer of the Davis defendants in the ■instant case sets forth that the purchases of the property made by Polly Davis were made for the benefit of her separate and paraphernal estate. The second deed above described contains the recital that the property was purchased “for herself and with her own funds”, but there is no recital of such nature in the first instrument by which the tract of five acres was acquired.
Concededly plaintiff has title to an oil, gas and mineral lease on the forty acre tract described as being the Southeast Quarter of Southeast Quarter of Section 36, Township 16 North, Range 7 West, of Bienville Parish, Louisiana, from- all parties claiming an interest herein, and it is also an admitted fact that Polly Davis, either in her own right or in community with her husband, owned the fee title to the forty acre tract described. All claims involved in the present dispute emanate from the Davis title.
By instrument dated April 2, 1936, Polly Davis and her husband executed a mineral deed in favor of C. R. Braswell by which they- conveyed an undivided one-half interest in the oil, gas and minerals in, on and under the forty-acre tract above described. This interest was subsequently conveyed by Braswell to Walter L. George, *502 one of the defendants herein. George subsequently sold one-fourth of the minerals, that is, one-half of the one-half which he had -acquired, to A. J. Harper, who assigned the interest to A. R. Wurtele, by whom it was subsequently 'sold and assigned to Oil Investments, Inc., defendant herein.
There has been no drilling on the SE/^ of SEJ4 of Section 36, but acting under the rights conferred by certain pooling agree? ments, which are hereinafter considered in some detail, plaintiff, Placid Oil Company, began the drilling of .a well in the Northwest Quarter of -Southeast Quarter of Section 36 on October 7, 1945, which was completed as a commercial producer of gas and liquid -hydrocarbons on November 29, 1945. The sum tendered by plaintiff in this pro■ceeding, namely $140.31, represents all the accumulated royalties from the operation of the well. No spacing regulations or allocations of acreage had been effected toy order of the Commissioner of Conservation of the State of Louisiana up to the time of trial.
The' Davis defendants contend that the mineral servitude created by their sale to Braswell on April 2, 1936, has become prescribed by the prescription of ten years liberandi causa. The defendants, George and Oil Investments, Inc., contend that there has been an acknowledgment of the servitude in question by the Davis defendants which interrupted the running of prescription prior to the expiration of the ten year period. These conflicting claims constitute the crux of this litigation.
The facts upon which the several parties rely, and which are material in the consideration of their opposing contentions are as follows :
Sometime during the year 1943 the plaintiff company prepared and began the circulation of certain pooling agreements which -had for their purpose the unitization of all of Section 36, Township 16 North, Range 7 West in Bienville Parish, Louisiana. Attached to these agreements was an instrument, designated “Exhibit A”, describing certain oil, gas and mineral ‘leases on lands in Section 36. 'The agreements were circulated in five so-called “counterparts”, one of which was executed by the defendant George, on April 4, 1944, another by defendant, Qil Investments, Inc., on July 15, 1944, and still a third by the Davis defendants on February 8, 1945.
It was pursuant to the procuration of these agreements, as above observed, that plaintiff undertook the drilling of a well.
In support of their plea of the prescription of ten years liberandi causa the Davis defendants rely upon the proposition that from the pooling agreement which was executed by Polly Davis and John Davis, Jr., there was specifically deleted paragraph 4 of Article 4 thereof. This paragraph reads-as follows:
“It is further agreed that any drilling or production on any part of the pooled premises' shall constitute an interruption of -prescription liberandi causa then running against the oil, gas and other mineral rights or royalty interest owned by any of the parties constituting Second Party in and to all of the lands covered by this pooling agreement and as to any and all other lands covered by any and all of said leases and so long as there may toe production of gas from any portion of the premises pooled herein or so long as royalty in lieu of such production shall be paid in accordance with the terms of this agreement, the same shall constitute an interruption of the running of prescription liberandi causa applicable under the law of the State of Louisiana to mineral servitudes and each monthly payment of any of the royalties or royalties in lieu of production hereunder shall be considered and accepted by all parties constituting Second Party as a new acknowledgment made for the purpose' and intent of interrupting said prescription as to all rights of all parties under all servitudes affecting the premises pooled herein.”
It is the contention of the other defendants, George and Oil Investments, Inc., that the cancellation or removal or deletion of the provisions above set forth did not have the effect of preventing the interruption of pescription by the drilling of a well on another tract of land in Section 36. In *503 support of this contention these defendants rely upon other provisions of the pooling agreement, as follows:
“Whereas, Placid is the owner, as indicated, of the oil, gas and mineral leases described in 'Exhibit ‘A’ annexed hereto and made a part hereof, and desires to obtain leases covering the tracts and interests therein, if any, described in said Exhibit ‘A’, which are not under lease at this time, and to enter into operating agreements with the other parties who own leases, if any, on lands described in said Exhibit ‘A’ and •such parties who own mineral rights in and to property described in said Exhibit ‘A’ who will not execute lease in its favor; and,
“Subject to the leases described in Exhibit ‘A’, Second Party is the owner or claims to be the owner of the surface or of the oil, gas and other mineral rights in and to the property described in Exhibit ‘A’ or of the royalties or production payments, if any, provided for in said leases, the respective parties constituting Second Party owning or claiming to own either the surface or undivided interests in the oil, gas and other mineral rights in one or more of said tracts described in Exhibit ‘A’; and,
“It appears desirable and advantageous to pool, combine and unitize said tracts of land for the development and production of gas and the liquid hydrocarbons contained therein into one unit comprising all of the following described lands, to-wit:
“Section 36 Township 16 North Range 7_ West, in Bienville Parish, Louisiana.
“Now, Therefore, It Is Agreed by and between Placid And Second Party and between and among the parties who constitute Second Party, as follows:
“1. For the development and production of gas and the liquid 'hydrocarbons contained therein, the separate tracts of land described in Exhibit ‘A’ are hereby pooled, combined and unitized and shall be treated, developed and operated for the production of gas and the- liquid hydrocarbons contained therein- by Placid in accordance with the lease or leases as herein amended covering and affecting such tracts as-one unit, one-tract and one lease; and all royalties or overriding royalties and other -benefits, if any, accruing by reason of the prodution of gas and liquid hydrocarbons contained therein from any part of the pooled premises shall be treated as an entirety and shall be divided among and paid to the separate royalty owners, overriding royalty owners or owners of -production payments, if any,. in the proportion that the aggregate acreage (mineral rights subject to the leases) owned by each separate royalty owner, overriding royalty owner or owner of production payment, in that part of any one or more of the tracts pooled, combined and unitized herein which is included in the pooled 'premises bears to the total acreage contained in the pooled premises; and payment of said royalties, overriding royalties or production payments that may be due from the production of gas and the liquid hydrocarbons contained therein from said tract or tracts when made in the proportions specified in this paragraph shall be and constitute full compliance by Placid with its obligation to make any such payment.
% sjt % # ‡ Jjc
“4., Drilling for gas on, or the production of gas from, any part of the pooled premises shall be considered and accepted by each of the parties constituting Second Party as such drilling and production under the terms of each of the oil and gas leases described in Exhibit ‘A’ and on and from each and every tract covered thereby;
* 5|C * * * *
“7. There shall be no obligation on Placid to drill any offset on the unit to any gas, distillate or condensate well drilled thereon, but said pooled area shall be operated by Placid without regard to the boundaries of" the separate tracts- constituting said pooled area. Placid shall not be required to drill any well or wells on the unit offsetting a well or wells on acreage adjacent to said unit so long as there i-s a well on the .unit formed herein .which is capable of producing gas, distillate, gasoline or condensate.
“10. * * * ■ and this agreement shall remain in force and effect so long as the *504 oil and gas leases described in said Exhibit ‘A’ shall remain in force and effect and shall be binding upon each and all of the parties hereto, their respective heirs, representatives, successors or assigns.
“11. This agreement may be executed in one document signed by all parties or in separate documents, which shall be counterparts hereof. If executed in separate counterparts, all such counterparts when executed by one or more of the necessary parties shall constitute but one and the same instrument. Also, any owner of any interest in said oil, gas, distillate, gasoline or condensate or of a lease or leases covering an interest or interests in the gas, distillate, gasoline or 'condensate on or in any of the lands shown in said Exhibit ‘A’ may validly pool and unitize the same with any of the lands, leases and interests pooled, combined and unitized ‘by this instrument by executing a separate and other pooling or unitization agreement for that purpose whether or not such other instrument is identical to this instrument.”
In addition to the above quoted conditions of the pooling agreements the defendants opposing the Davis claim also cite the following provision from the “Exhibit A” Which was attached to the pooling agreements :
“There shall be considered as included in this ‘Exhibit A’ any other oil, gas and mineral leases or subleases now owned by Placid Oil Company, or which it may acquire at any time during the existence of this agreement, covering any portion of the unit created by the Pooling Agreement to which this Exhibit is annexed, and all Co-Lessors’ Agreements or other forms of ratification executed in connection with any lease described herein as well as any such other lease, in so far as the same apply to any portion of said unit.”
It is, of course, conceded by the opponent defendants' that the portion of the pooling agreement executed by Polly Davis and John Davis, Sr., which was crossed or Stricken out, must ibe considered as if it had never been contained or written in the instrument. It also appears to K; conceded that the mere execution of the pooling agreements did not 'have the effect of interrupting, suspending or extending the mineral servitudes claimed :by the appellants, George and Oil Investments, Inc.
But it is strenuously urged that the execution of the pooling agreements effected the unitization of all of the mineral interests in Section 36 in its entirety to such end that a well drilled or produced on any tract within said section would serve to interrupt the running of prescription against all mineral interests in such section.
In other words, as we appreciate the position of these defendants the gist of their contention is that the action of the Davis defendants in agreeing, to the pooling and unitization of all leases in Section ,36 bound them to abide by all possible effects resulting from the physical drilling of a well pursuant to such agreement.
A considerable portion of appellants’ argument is devoted to their objection to the ruling of the trial Judge in admitting pa-rol evidence on the part of the Davis-defendants which, so they claim, had the effect of varying or altering the terms of the written - pooling agreement. We pretermit discussion of this point since in our opinion the instrument itself, without consideration of- parol evidence, is susceptible of a plain and unambiguous interpretation! which is determinative of the issue here-involved. Accordingly, we proceed, to a. discussion of this issue.
The primary question to be decided is concerned with' a pronouncement as to whether the drilling of the Nefoo Oil Company Well #A-5 in the Northwest Quarter of the Southeast Quarter of Section 36 served to interrupt the running of prescription against the mineral servitudes owned, by the defendants, George and Oil Invest--ments, Inc., in, under and to the Southeast Quarter of Southeast Quarter of Section 36.
It is obvious that in the absence of the ■interruption of prescription the rights conveyed in the mineral deed executed by Polly-Davis and her husband, John Davis, Sr.,. *505 to C. R. Braswell, from which' appellants deraign their title; expired ten years after April 2, 1936.
Inasmuch as there was no drilling on the Southeast Quarter of Southeast Quarter it follows that appellants must rely upon an acknowledgment of their rights by the Davis defendants. The fact vel non of such acknowledgment, in our opinion,' must fall under the provisions of Article 3520 of the Civil Code which reads as follows:
“Acknowledgment of title in another.— Prescription ceases likewise to run whenever the debtor, or possessor, makes acknowledgment of the right of the person whose title they prescribed.”
We think it is well established by our jurisprudence that the acknowledgment contemplated by the codal article must comply with certain very definite requirements. The acknowledgment must be express; it must ibe certain; it must be definite; it must be accompanied by or coupled with the clear purpose and intention of the party to interrupt prescription by such an acknowledgment. These requirements have been considered and discussed by our Supreme Court in a number of cases, among which we particularly note Frost Lumber Industries, Inc. v. Union Power Co., 182 La. 439, 162 So. 37; Bremer v. North Central Texas Oil Co., Inc., 185 La. 917, 171 So. 75; Goldsmith v. McCoy, 190 La. 320, 182 So. 519; Vincent v. Bullock, 192. La. 1, 187 So. 35; Goree v. Sanders, 203 La. 859, 14 So.2d 744.
It is apparent that if paragraph 4 of Article 4 of the pooling agreement had remained untouched and the Davis defendants 'had executed the agreement, the effect would have been to acknowledge in words the interruption of prescription. And it is equally as obvious that the purposes and intention of these parties in striking out the provisions of this paragraph was in effect to deny the interruption of prescription and to refuse any acknowledgment thereof. We hold that even without the benefit of parol evidence explaining the intention of the parties such a conclusion is inescapable.
But appellants argue, first, that other portions of the instrument overcome the effect of the striking out of the paragraph noted, and, second, that since the several instruments executed by the several defendants were “counterparts” the Davis defendants knew or should have known that by their agreement in pooling or unitizing they were consenting to the interruption of prescription which might be accomplished through the drilling of a well on any land in Section 36.
Proceeding to a discussion of these points we think it pertinent first to observe that all the -pooling agreements constituted contracts between this plaintiff, the Placid Oil Company, as lessee, and the individual owners of mineral rights in Section 36. Appellants cannot possibly contend that they relied upon an instrument executed by the Davis defendants, in view of the fact that this instrument was signed subsequent to the execution of the pooling agreements between appellants and Placid Oil Company.
■Careful examination and consideration of the provisions of the pooling agreement which are advanced by appellants in support of their contentions merely serve to reinforce our conclusion that these provisions, each and every one thereof, were made for the benefit and protection of Placid Oil Company and not, by any stretch of the imagination, for the benefit or interest of appellants.
We have carefully examined the authorities cited by appellants and find nothing which would indicate to our minds the interpretation of the pooling agreements for which appellants contend. None of these cases involved the execution of an instrument in which the clear intention and purpose of the signers thereof had been indicated by a specific action in deleting a provision of • material importance as has been done in this case. And further, we point out that the instrument here in question was not jointly executed.
We are impressed by the pronouncement in the opinion of Mr. Chief Justice Fournet in Robinson v. Horton, 197 La. 919, 2 So.2d 647, 648, as follows:
*506 “Under the express provisions of the Revised Civil Code and the jurisprudence thereunder, the rights- of parties to a contract are to be governed by the intention of the parties thereto, as reflected by the terms thereof, and subject only to the law that controls the subject matter of the contract. Revised Civil Code, Articles 1945-1962; Shell Petroleum Corp. v. Calcasieu Real Estate & Oil Co., 185 La. 751, 170 So. 785; Louisiana Canal Co. v. Heyd, 189 La. 903, 181 So. 439, 116 A.L.R. 1260; Cox v. Acme Land & Investment Co., 192 La. 688, 188 So. 742; and Brown v. Sugar Creek Syndicate, 195 La. 865, 197 So. 583.”
Even stronger than in the Robinson case do we find the pronouncements in the opinion, again by Mr. Chief Justice Fournet, in Spears v. Nesbitt, 197 La. 931, 2 So.2d 650. In the course of this opinion the. Court called attention to the case of Achee v. Caillouet, 197 La. 313, 1 So.2d 530, in which it was-held that even the joining of the land owner with the mineral owner in a lease contract did not constitute an interruption or prescription unless the same was clearly intended by the parties.
Nor are we inclined in any degree to maintain the reasoning of learned counsel for appellants predicated upon the holding of this Court in Ohio Oil Co. v. Kennedy, La.App., 28 So.2d 504, and the provisions of Section 9 of the Act No. 157 of 1940. The Kennedy case involved the establishment of a drilling unit by order of the Commissioner of Conservation. Similarly Section 9 of Act No. 157 of 1940 is concerned only with the results of a pooling order.
According to stipulation in the case before us no spacing nor drilling regulations nor orders had been issued by the Department of Conservation. Again we point out that the pooling agreements under consideration were effected by ¡contract' between the Placid Oil Company and the several defendants.
Governed by the principle above expressed, we cannot conceive of any clearer method, means or manner ■ of expressing the intention of the parties than has been observed in the ¡contract and agreement here under consideration.
Appellants apparently attempt to subject themselves to the advantages of the interpretation of the joint execution of an agreement by claiming that the pooling agreements under consideration were “counterparts” and therefore must be regarded as one and the same instrument. Under the circumstances here present we cannot subscribe to the conclusion that the pooling agreements were counterparts despite such declarations in the instruments themselves. It is our understanding that a counterpart must be considered as an exact copy of another instrument generally used for ¡convenience in procuring signatures of several parties to the same agreement. 10 Words & Phrases, Perm.Ed. page 43, verbo -Counterpart. Black’s Law Dictionary, Third Edition, page 452, verbo Counterpart.
By no definition with which we are cognizant can the pooling agreements signed by all the defendants in -this case be ¡considered counterparts. The term may accurately be applied to the agreements executed by the defendant, George and the defendant, Oil Investments, Inc., but the agreement executed by the Davis defendants differs from the others by reason of the deletion or striking out of a whole paragraph therefrom.
Finally, it is urged that in -any event the appellants are entitled to share in royalties flowing from the completed well in Section 36, regardless of the continuance, vel non, of their mineral interests.
We cannot subscribe to this conclusion. The mere execution of a pooling or unitization agreement, in our opinion, does not have the effect, in itself, of severing royalty interests from mineral interests. This is even more surely true in the instance with which we are confronted where there is definite evidence of the opposition of the contracting party to the surrender of any of his rights. We think this point is specifically covered by the following pronouncement in Spears v. Nesbitt, supra [197 La. 931, 2 So.2d 653] :
*507 “There is nothing in the lease under consideration in this case to indicate that the land owner in executing the lease jointly with the mineral owners intended to interrupt the prescription. On the contrary, their intention is clearly to pool their interest for a common cause, i. e., the development of the property. By the terms of the contract the mineral rights of the landowner, as well as those of the defendant company, were unitized or integrated so as to form one indivisible whole and it was ■especially provided for the sharing of the royalties to be derived therefrom according io their mineral oimership(Emphasis by the Court.)
The most that can possibly be accorded appellants, as we view this matter, is an interest in royalties from plaintiffs’ well in Section 36 from the date of the completion ■of said well, that is, November 29, 1945, to the date of expiration of appellants’ mineral interest, that is, April 2, 1946.
From a strictly technical viewpoint, in ■order to enforce this right it would be necessary to remand this case for showing as to the amount of such’ accrued royalties between the dates set forth. But, to our minds, this amount would ibe such an inconsiderable sum that we prefer -to leave the matter to adjustment between the parties themselves in accordance with our ■opinion.
For the reasons assigned the judgment appealed from is amended to read as follows :
“It Is Therefore Ordered, Adjudged And Decreed that the defendant, C. B. Davis, Administrator of the Succession of Polly Davis, and the defendant, John Davis, Sr., do have and recover judgment against the defendants, Walter L. George and Oil Investments, Inc., sustaining the pleas of. prescription of ten (10) years liberandi causa filed by the defendants, Polly Davis, now ■deceased, and John Davis, Sr., and, accordingly, it is ordered that the mineral servitude originally created in favor of C. R. Braswell and dated April 2, 1936, and as recorded in Book 110, Page 139 of the Conveyance Records of Bienville Parish, Louisiana, and the subsequent sale of said mineral interest from C. R. Braswell to Walter L. George, dated April 29, 1936, as recorded in Book 110, page 628 of the Conveyance Records of Bienville Parish, Louisiana, and the subsequent sale by Walter L. George of one-half (1/2) of his interest, or one-fourth (j4) of the whole thereof to A. J. Harper by instrument dated April 29, 1936, as recorded in Book 110, Page 630 of the records of Bienville Parish, Louisiana; and, the subsequent sale of said one-fourth (Vé) mineral interest from A. J. Harper to A. R. Wurtele, dated May 14, 1936, as recorded in Book 112, Page 298 of the Conveyance Records of Bienville Parish, Louisiana; and, the subsequent sale of said one-fourth (^) mineral interest from A. R. Wurtele to Oil Investments, Inc., dated June 15, 1936, as recorded in Book 113, Page 141 of the 'Conveyance Records of Bienville Parish, Louisiana; and, insofar as all of said sales and instruments cover and affect the following described property situated in Bienville Parish, Louisiana, to-wit: ‘SEj4 of SE14 of Section 36, Township 16 North, Range 7 West;’ be, and the .same are hereby ordered cancelled and erased from the Conveyance Records of Bienville Parish, Louisiana, insofar as the same may cover and affect the herein above described property.”
It is further ordered, adjudged and decreed that such part of the sum of money deposited by the plaintiff, Placid Oil 'Company, in the archives of the Court as accrued from royalties ¡between the dates of November 29, 1945, and April 2, 1946, be divided as' follows, to-wit:
One-half (1/2) to C. B. Davis, Administrator of Succession of Polly Davis, and the defendant, John Davis, Sr., in equal proportions;
One-fourth (*4) to the defendant, Walter L. George;
One-fourth (%) to the defendant, Oil Investments, Inc.
It is further ordered, adjudged and decreed that such part of the sum deposited by plaintiff as represents royalties accruing subsequent to April 2, 1946, be, and it is hereby declared to belong to the defendant, C. B. Davis, Administrator of the Sue- *508 cession of Polly Davis, and the defendant, John Davis, Sr., in equal proportions.
It is further ordered that the sum on deposit be ordered paid over to the respective parties above named in the- interests therein set forth.
As amended the judgment appealed from is affirmed at appellants’ cost.