59 So.2d 120

PLACID OIL CO. v. GEORGE et al.

Nos. 40216, 40225.

April 28, 1952.

R. D. Fuller, Shreveport, Meadors, Shaw & Meadors, Homer, Chaffe, McCall, Toler & Phillips, New Orleans, for relators.

Goff & Caskey, Arcadia, for plaintiff-respondent.

Robert H. Wimberly, Arcadia, for defendants-respondents.

HAMITER, Justice.

Pursuant to the provisions of Act No. 123 of 1922, LSA–R.S. 13:4811 et seq., the Placid Oil Company, on October 25, 1947, instituted this concursus or interpleader proceeding, depositing in the registry of the District Court in and for Bienville Parish the sum of $140.31.

In the petition plaintiff alleged these facts. By an instrument dated April 2, 1936, John Davis, Sr. and Polly Bates Davis conveyed to C. R. Braswell a one-half oil, gas and mineral interest in the SE¼ of SE¼ of Section 36, Township 16 North, Range 7 West, Bienville Parish. Through mesne conveyances title to the mineral interest became vested in Walter L. George and Oil Investments, Inc. Oil, gas and mineral leases covering the de-

scribed land, executed by George, Oil Investments, Inc., and the Davises, were acquired by plaintiff. By virtue of various recorded instruments all lands in Section 36, Township 16 North, Range 7 West, Bienville Parish, including the tract above described, were pooled and unitized for the production of gas and the liquid hydrocarbons contained therein. On or about November 30, 1945, on the unit so formed, plaintiff completed well No. "A"–5, productive of gas and liquid hydrocarbons in paying quantities. Since the well's completion there have accumulated to the credit of the mineral interest acquired by George and Oil Investments, Inc., in accordance with the provisions of the leases and other agreements, royalties amounting to $140.31. This sum, deposited in the registry of the court, is claimed in part or in its entirety by the Davises, George and Oil Investments, Inc.; and plaintiff is unable to determine which is entitled to it.

After making these allegations plaintiff prayed " * * * that there be proper service and citation hereof on Walter L. George, John Davis, Sr., Polly Davis and Oil Investments, Inc. and that all of said persons be cited to answer and to make such claim to the money deposited as they may desire;

"That after due and legal proceedings had herein, there be judgment relieving and discharging the petitioner from all liability for the payment of said money and decreeing the ownership of said funds."

Answering the petition of plaintiff, the Davises, on the one hand, and George and Oil Investments, Inc., on the other, asserted opposing claims to the disputed deposit, minerals and royalties. The Davises pleaded specially that the mineral rights formerly owned by defendants George and Oil Investments, Inc. (acquired by virtue of the mineral deed which the Davises executed on April 2, 1936), had become extinguished by the prescription of 10 years liberandi causa.

The judgment of the district court, following a trial of the merits, sustained the Davises' plea of prescription, and ordered the cancellation of all instruments by and through which George and Oil Investments, Inc., had acquired their one-half mineral interest in the above described 40 acre tract. Further, it decreed that the deposited money belonged to C. B. Davis, administrator of the Succession of Polly Bates Davis (she having died in the meantime) and John Davis, Sr., in equal portions.

From the judgment George and Oil Investments, Inc., appealed to the Court of Appeal, Second Circuit. There, the judgment was amended to the extent of awarding to George and Oil Investments, Inc., one-half of that part of the deposited money which represented royalties accruing between November 29, 1945 and April 2, 1946 (the date the servitude became extinguished); and, as amended, the judgment was affirmed. See 49 So.2d 500.

On the applications of George and Oil Investments, Inc., we granted the writ of certiorari.

The record discloses that in 1943 the Placid Oil Company (plaintiff in this concursus) undertook to unitize all lands in Section 36, Township 16 North, Range 7 West, Bienville Parish, with the view of drilling a well within the unit for the production of gas and liquid hydrocarbons. Included in the mentioned section was a 40 acre tract of land, owned by the Davises and described as the SE¼ of SE¼, in which George and Oil Investments, Inc., then held a one-half mineral interest, it having been acquired by virtue of an instrument which the Davises executed on April 2, 1936. On such tract the Placid Oil Company had obtained separate oil, gas and mineral leases from the Davises and from the named mineral owners.

In connection with its program to unitize all lands in the above mentioned section, plaintiff prepared and circulated, among the various interested land and mineral owners, printed forms of a proposed agreement which contained, among others, the following pertinent provisions:

"Now, Therefore, It Is Agreed by and between Placid and Second Party and between and among the parties who constituted Second Party as follows:

"For the development and production of gas and the liquid hydrocarbons contained therein, the separate tracts of land described in Exhibit 'A' are hereby pooled, combined and unitized and shall be treated, developed and operated for the production of gas and the liquid hydrocarbons contained therein by Placid in accordance with the lease or leases as herein amended covering and affecting such tracts as one unit, one tract and one lease; and all royalties or overriding royalties and other benefits, if any, accruing by reason of the production of gas and liquid hydrocarbons contained therein from any part of the pooled premises shall be treated as an entirety and shall be divided among and paid to the separate royalty owners, overriding royalty owners or owners of production payments, if any, in the porportion that the aggregate acreage (mineral rights subject to the leases) owned by each separate royalty owner, overriding royalty owner or owner of production payment, in that part of any one or more of the tracts pooled, combined and unitized herein which is included in the pooled premises bears to the total acreage contained in the pooled premises; and payment of said royalties, overriding royalties or production payments that may be due from the production of gas and the liquid hydrocarbons contained therein from said tract or tracts when made in the proportions specified in this paragraph shall be and constitute full compliance

by Placid with its obligation to make any such payment.

\*    \*    \*    \*    \*    \*

"This agreement may be executed in one document signed by all parties or in separate documents, which shall be counterparts hereof. If executed in separate counterparts, all such counterparts when executed by one or more of the necessary parties shall constitute but one and the same instrument. Also, any owner of any interest in said oil, gas, distillate, gasoline or condensate or of a lease or leases covering an interest or interests in the gas, distillate, gasoline or condensate on or in any of the lands shown in said Exhibit 'A' may validly pool and unitize the same with any of the lands, leases and interests pooled, combined and unitized by this instrument by executing a separate and other pooling or unitization agreement for that purpose whether or not such other instrument is identical to this instrument.

\*    \*    \*    \*    \*    \*

"Drilling for gas on, or the production of gas from, any part of the pooled premises shall be considered and accepted by each of the parties constituting Second Party as such drilling and production under the terms of each of the oil and gas leases described in Exhibit 'A' and on and from each and every tract covered thereby; and so long as there may be any drilling or production on any portion of the prem-ises pooled herein, such drilling or production shall produce the same effect respecting the continuance of all leases in force and effect as to the property described therein which is included within the premises pooled herein as if drilling had been done on or production secured from each and all of the tracts described in Exhibit 'A'.

\*    \*    \*    \*    \*    \*

"It is further agreed that any drilling or production on any part of the pooled premises shall constitute an interruption of prescription liberandi causa then running against the oil, gas and other mineral rights or royalty interest owned by any of the parties constituting Second Party in and to all of the lands covered by this pooling agreement and as to any and all other lands covered by any and all of said leases and so long as there may be production of gas from any portion of the premises pooled herein or so long as royalty in lieu of such production shall be paid in accordance with the terms of this agreement, the same shall constitute an interruption of the running of prescription liberandi causa applicable under the law of the State of Louisiana to mineral servitudes and each monthly payment of any of the royalties or royalties in lieu of production hereunder shall be considered and accepted by all parties constituting Second Party as a new acknowledgment made for

the purpose and intent of interrupting said prescription as to all rights of all parties under all servitudes affecting the premises pooled herein.

\*    \*    \*    \*    \*    \*

"Failure of any one or more persons owning an interest in and to the oil, gas or other minerals in or under, or that may be produced from any part of the unit described and designated hereby to sign this agreement shall not in any manner affect the validity of same as to the parties who execute same. The failure of title, loss of title, or lack of title on the part of any one who claims to be one of the parties constituting Second Party shall not affect the rights of any other party to this agreement, but in such event the royalties payable from the production or sale of products or royalties payable in lieu of production shall be adjusted accordingly. Nothing expressly contained herein or in any other agreement which any of the parties hereto have heretofore executed nor any implication nor any payment of rental or royalties heretofore or which shall hereafter be made by Placid shall ever estop Placid from refusing to pay rentals or royalties to any party who claims to own an interest in the pooled premises but who does not actually own an interest therein."

Printed forms of this proposed agreement, without any changes or modifications

being made, were executed by defendant George on April 4, 1944, and by defendant Oil Investments, Inc., on July 15, 1944.

But when the proposed agreement in a separate document was thereafter submitted by representatives of plaintiff to the Davises, these landowners vigorously objected to the paragraph which provided that drilling or production on any part of the pooled premises, or payment of royalties in lieu of production, shall constitute an interruption of prescription liberandi causa then running against the oil, gas and other mineral rights or royalty interest owned by any of the parties constituting "Second Party" in and to all of the lands covered by the pooling agreement. They stated emphatically that they would sign nothing that would have the effect of extending the mineral rights on their property. The representatives of plaintiff, thereupon, agreed to and did strike out the entire mentioned paragraph relating to the interruption of prescription, explaining to them at the time that the outstanding mineral interest—prescribing within a year or a year and a half—would, under the agreement as modified, be unitized when it came back into them. With such paragraph deleted, and being assured that the minerals would not be extended, the Davises signed the unitization document on February 8, 1945.

After obtaining the variously executed unitization instruments, plaintiff commenced the drilling of a well on the NW¼

of SE¼ of the unitized section, not on the 40 acre Davis tract. The well was completed as a producer on November 30, 1945. In due course the instant dispute developed.

In their original brief to this court counsel for George and Oil Investments, Inc., state their position, as well as that of the Davises, as follows:

"The claim of George and Oil Investments, Inc., is based upon their acquisition of an undivided one-fourth (¼) mineral interest each in the forty acres in question and the provisions of the pooling or unitization agreement under which production was had. This claim is opposed by the Davises on the ground that these mineral servitudes became extinguished by ten years' liberative prescription. *It follows, since prescription has otherwise clearly run, that the sole question presented to the Court for determination is the effect of the pooling or unitization agreement on the rights of the various defendants.* (Emphasis ours.)

\*    \*    \*    \*    \*    \*

"\*  \*  \* It is submitted that the answer to this question is to be found in the contract itself and that no inquiry need be made whether the mineral owners' servitude remains in existence, as this fact is utterly immaterial. The rights of the landowners (the Davises) and the mineral owners (George and Oil Investments, Inc.),

like those of parties to any contract, are and must be determined by the provisions of the contract into which they have entered.

\*    \*    \*    \*    \*    \*

"\*  \*  \* By signing a counterpart of the agreement containing these provisions, the Davises granted the rights and accepted the privileges therein set forth. Even conceding that their deletion of the last paragraph of section Four evidenced a desire not to interrupt or suspend prescription in any way, such a desire cannot prevail over express stipulations contained in the agreement signed by them on the ground that such express stipulations were inconsistent with such desire. The meaning and intent of the agreement were and are perfectly clear; the parties thereto were to participate in mineral royalty payments according to their interests as shown therein. No condition was imposed upon this participation, no requirement was made that the servitudes of mineral owners not be extinguished. \*  \*  \*

"The issue is simply one of contract: What are the rights of the parties under the pooling or unitization agreement? With all due respect to the Trial Judge and the Court of Appeal, the issue is not whether prescription was interrupted, or suspended, for the parties have contracted independently of this contingency. And your

Honors, in a series of decisions, have established the principle that in such a situation the agreement becomes the law among the parties thereto and that its provision that the rights of mineral owners shall be preserved or extended during the period of production thereunder should control. * * *"

Thus, George and Oil Investments, Inc., concede, as they must, that the prescription of 10 years liberandi causa has accrued against their mineral interest granted by the Davises in 1936. Their claim to the disputed royalties, as opposed to that of the Davises, is predicated entirely on the contention that the latter, having signed a counterpart of the agreement circulated by Placid Oil Company, entered into a binding contract with them which stipulated that they would receive royalties from any well drilled in the unitized area so long as production therefrom continued. And in support of the contention they cite and rely principally on Robinson v. Horton, 197 La. 919, 2 So.2d 647, wherein it was held that the land and mineral owners were bound by the provisions of their joint lease and pooling agreement which provided that all of them should receive royalties from the oil production in the proportion that their mineral rights bear to the whole, and that the question of whether the outstanding mineral servitudes were actually used by drilling is immaterial.

■ The contention of George and Oil Investments, Inc., cannot be sustained, and the Robinson case is without application here, for the reason that no pooling or other binding contract existed between such claimants and the Davises. The document signed by the Davises was not a counterpart, as asserted, of the proposed agreement circulated by Placid Oil Company and executed without modification by defendants George and Oil Investments, Inc. The very material provision relating to the interruption of prescription was deleted therefrom before the Davises signed; and, as a result of this deletion, there was not a uniting of the will of all of these defendants on the same points, such as is essential in the formation of a valid contract. Civil Code Article 1798 et seq.

■ Therefore, it is certain that the Davises are entitled to receive royalties, pursuant to their contract with Placid Oil Company, from the well in question. But we deem it improper to decree in this cause that the deposited fund be paid to them. It may be that the Placid Oil Company is liable also to George and Oil Investments, Inc., as their counsel argued orally and alternatively here, in view of certain provisions of the separate contracts and of such plaintiff's permitting the Davises to modify the unitization agreement (a question which cannot be determined under the present pleadings and record). And if there is the suggested additional liability (the record fails to affirmatively show that it does not exist) a concursus proceeding, such as this, is inappropriate

for adjudicating the rights of the several parties.

Act 123 of 1922, under which this concursus was instituted, was enacted for the purpose of avoiding a multiplicity of suits, and it contemplates a proceeding leading to one judgment which finally settles all issues between all of the parties. The whole controversy is over the money deposited, and none of the claimants has the right to obtain a judgment in reconvention against the depositor. Hennington v. Petroleum Heat & Power Co. of Louisiana, 194 La. 188, 193 So. 583; Transo Investment Corporation v. Oakley, La.App., 37 So.2d 560. For the proceeding to lie a plaintiff must stand indifferent toward the claimants merely as a stakeholder. 30 American Jurisprudence, verbo Interpleader, Section 8. The provisions of the statute cannot be availed of when a sum equal to the amount deposited may be owed to more than one person. Transo Investment Corporation v. Oakley, supra. All of this is clearly indicated by Section 1 of the statute, LSA-R.S. 13:4811, when it provides that after making the deposit in the registry of the district court the plaintiff shall be relieved of all liability for the payment of said money.

Since the record before us does not satisfactorily disclose that the plaintiff herein stands indifferent toward these defendants merely as a stakeholder, and there being a strong possibility that it is indebted to all of them, we must hold that this concursus was wrongfully provoked. Accordingly, the instant proceeding will be dismissed, reserving to the claimants whatever rights they may have in connection with the transaction involved herein and directing a return of the deposited money to plaintiff.

For the reasons assigned the judgments of the district court and the Court of Appeal are reversed and set aside, and it is now ordered that this suit be dismissed. All rights of the defendants are reserved, and the clerk of the district court is directed to return to plaintiff the fund deposited by it. Plaintiff shall pay the costs of all courts.