116 So.2d 532 (1959)
Frank ALEXANDER, Plaintiff-Appellant,
v.
J. E. HOLT et al., Defendant-Appellee.
No. 9127.
Court of Appeal of Louisiana, Second Circuit.
November 25, 1959.
Rehearing Denied December 22, 1959.
*533 Ellis & Ellis, Rayville, for appellant.
Oliver & Fudickar, Monroe, Warren Hunt, Rayville, for appellee.
AYRES, Judge.
This is a contest for ownership of the minerals in the NE ¼ of the NW ¼ of Sec. 31, T. 17 N., R. 9 E., Richland Parish, Louisiana, less 4.44 acres in the NW Corner.
Defendants claim ownership by virtue of a deed, whereby defendant Holt sold to plaintiff Alexander the aforesaid tract of land, dated October 25, 1943, wherein Holt reserved unto himself, his heirs and assigns, the whole of the minerals underlying said land. In opposition to defendants' claim, plaintiff contends there has been no user of the aforesaid mineral servitude within a period of 10 years; there has been no drilling, exploration or development whatsoever upon said land for the recovery of oil, gas or other minerals for a period of time in excess of 10 years; and that, as a consequence, the mineral reservation made by Holt has expired and prescribed.
The defendants contend, however, that, by virtue of a unitization agreement voluntarily entered into by most, but not all, of the mineral holders in the Delhi Field, which has the approval of the Commissioner of Conservation, as evidenced by Order 96-G, they have been receiving royalties attributable to the minerals underlying the aforesaid property. To this, plaintiff counters with the assertion that the aforesaid arrangement was a voluntary conventional agreement among those who executed and signed the samenot binding on other partiesand that the order of the commissioner was one of a mere permissive approval insufficient to constitute an integration or forced pooling of the properties involved; that, accordingly, a mineral holder's voluntary act, in the absence of a user thereof by drilling, exploration, or production from said tract, was insufficient to either suspend or interrupt the running of prescription against the mineral servitude.
The Delhi Oil Field covers an area of approximately 12½ miles in length by a maximum width of 2½ miles. By virtue of the Commissioner's Order 96, 40-acre spacing or drilling units were established for the field. During development, production was had from the 40 acres lying north and adjacent to plaintiff's land. November 25, 1947, Order 96-A-16 was issued whereby 4.44 acres, triangular in shape, in the *534 northwest corner of plaintiff's land was added to, or tacked onto and made a part of, the adjacent producing unit to the north. This acreage is not involved, as plaintiff concedes that since its inclusion in a producing unit prescription has not accrued. Childs v. Washington, 229 La. 869, 87 So. 2d 111; Jumonville Pipe & Machinery Co., Inc., v. Federal Land Bank of New Orleans, 230 La. 41, 87 So.2d 721.
In the aforesaid cases, it was held that the tacking on, or inclusion, of acreage from one tract to an adjacent producing unit by an order of the Commissioner of Conservation had the effect of interrupting liberative prescription only as to the acreage included in such producing unit. It is therefore conceded that the inclusion of the 4.44 acres in the adjacent producing unit did not have the effect of interrupting or suspending the tolling of prescription as to the acreage outside the producing unit. Defendants, however, urge, as an exception to the otherwise applicable rule of liberative prescription, the provisions of the aforesaid Order 96-G of the Conservation Department which, it is contended, have the effect of interrupting the tolling of prescription as to the 35.56 acres located outside the drilling unit.
A drilling unit, as contemplated by the statute, Act 157 of 1940, LSA-R.S. 30:1 et seq., means the maximum area which may be efficiently and economically drained by one well, which shall be deemed to constitute a developed area as long as a well is located thereon which is capable of producing oil or gas in paying quantities. Such a unit, or units, shall be established for each pool (LSA-R.S. 30:8, subd. B). However, in the event two, or more, separately-owned tracts of land are included within a drilling unit, which has been established by the commissioner, the owners are authorized to enter into conventional agreements to pool their interests and to develop their lands as a single drilling unit. But, should such owners be unable to agree upon such pooling, the commissioner is empowered to force pool such tracts and to require their development as a unit. This is commonly referred to as "integration" or "forced pooling." LSA-R.S. 30:9, subd. A, 24 Tulane Law Review, p. 158.
Where forced pooling is directed by an order of the commissioner, the owners of separate mineral tracts under an established drilling unit must pool their interests for the purposes of development, and a well drilled thereon is considered as having been drilled upon each of the separately-owned mineral tracts within the unit. The owners of such minerals share pro rata in production from the unit in the proportion that their mineral acreage bears to the total unit area. Furthermore, the drilling of the well within such drilling unit has the effect of interrupting the running, or tolling, of liberative prescription as to each individual tract of minerals located in the unit, because, in the interest of avoiding waste, each unit is ordinarily limited to one well for developmental purposes. This has been held a valid exercise of the State's police power through the aforesaid general conservation law, the provisions of which control in any contract affected thereby. Robinson v. Horton, 197 La. 919, 2 So.2d 647; Childs v. Washington, supra.
Therefore, if the effect of the Commissioner's Order 96-G was to integrate or force pool the entire area comprising the Delhi Oil Field, which was dated December 2, 1952, effective as of February 1, 1953, and as amended February 16, 1953, the tolling of the 10-year liberative prescription, as to the minerals under plaintiff's tract of 35.56 acres, would have been interrupted or suspended prior to the expiration of 10 years from the date of the reservation and creation of said mineral servitude which, otherwise, would have prescribed October 25, 1953.
As stated, plaintiff contends there was no forced pooling or integration intended or contemplated by the commissioner's order. For a determination of the question thus presented, reference should be made *535 to the title and the appropriate provisions of Order 96-G. The title is an
"Order authorizing a program of pressure maintenance under certain unitization agreements, approving such agreements, and approving and authorizing the unitization provided therein, as to the parties thereto, all pertaining to a certain zone underlying the Delhi Field, Richland, Franklin, and Madison Parishes, Louisiana."
The "unit area" was defined as that area of the Delhi Field in the aforesaid parishes described as the "unit area" in the unitization agreement, and as such area as may be enlarged or reduced in accordance with the provisions of the agreement.
In the unitization agreement, a detailed description of the property in the unit area was listed as comprising 238 tracts and as shown by a map, or plat, of the area and dimensions hereinabove set forth as for the Delhi Oil Field. The purpose of the agreement was to offset a decline in reservoir pressure and to institute a program of secondary recovery by means of a system of water injection into certain zones of production. The commissioner's order granted approval to the agreements for unitization of the area and for the unitization of all separate ownerships in the unitization zone underlying the unit area where the owners who have executed or ratified the agreements, or should thereafter execute or ratify the same, approved and authorized a program of pressure maintenance contemplated in the agreements and specifically provided, in the amendments thereto, that
"Nothing contained in this order shall be construed to change the method previously established for fixing allowables for production from individual developed units or to authorize the establishment of field-wide or pool-wide allowables, until a change shall have been requested, a public hearing shall have been held thereon and such change shall have been approved by the Commissioner of Conservation.
* * * * * *

"Nothing contained in this order shall be construed as imposing the provisions of the Unit Operating Agreement or the Unitization Agreement upon any person, firm or corporation who did not execute such agreements or as making anyone who did not execute those agreements subject thereto. (Emphasis supplied.)
* * * * * *
"Nothing contained in this order shall be construed to permit the injection of water or other extraneous substances into the Unitized Zone or any part thereof (except such as previously has been authorized) until a plan for injection showing the location of the injection well or wells shall have been presented, a public hearing shall have been held thereon and such plan shall have been approved by the Commissioner of Conservation."
In Hunter v. Hussey, Commissioner of Conservation, 90 So.2d 429, 432, an action seeking, among other things, an injunction against the enforcement of the commissioner's Order 96-G, the Court of Appeal for the First Circuit stated:
"At this point it may be well to observe that the Commissioner specifically disclaimed authority to institute a compulsory water injection secondary recovery program. * * *
"The Commissioner takes the position that the orders in question are merely permissive in character, effective only with respect to the operators who signed the Unitization and Unit Operating Agreements, and do not mandatorily require any unitized program of secondary recovery by the water injection method as to nonsigning parties. * * *
* * * * * *

*536 "Order 96-G simply approved in principle the water injection methods set forth in the Unit Operating Agreement. As amended, the order on its face disclaimed any effect on the previously established method of determining allowables for production from each individual 40-acre drilling unit, and any purpose of authorizing the establishment of a unitized field-wide or poolwide allowable. The order further provided that no person not a party to the Unit Operating or Unitization Agreements would become subject to such agreements providing for a field-wide water injection secondary recovery program; nor would any specific injection of water in any well be permitted until after full public notice and further hearing."
With this finding, we are in full accord and conclude there was no integration or forced pooling of the area involved or contemplated by the voluntary agreements entered into by most, but not all, of the owners of interest and operators in the Delhi Field.
If defendant Holt's action was predicated upon an intent to extend his mineral rights upon plaintiff's property, his acts are insufficient to accomplish the purpose. The defendant's inclusion of the 35.56 acres in the conventional agreement was by his own act, not concurred in, consented to, or approved by plaintiff; nor is it shown by any act on the part of plaintiff, he has, in any manner, approved or acquiesced in the agreements or in the subsequent proceedings. The owners of a servitude are powerless to extend their mineral rights without the consent of the landowners who, under the law, must clearly and definitely state or act in such a way so as to show that it was their intention to interrupt the running of prescription and start it anew. White v. Hodges, 201 La. 1, 9 So.2d 433, 437; Baker v. Wilder, 204 La. 759, 16 So. 2d 346, 351.
See, also, Hightower v. Maritzky, 194 La. 998, 195 So. 518, 521, wherein it was stated:
"In order for an acknowledgment by a landowner that his land is subject to certain mineral rights in favor of a person named in the acknowledgment to have the effect of interrupting the prescription by which such rights are extinguished the intention that the acknowledgment shall have that effect must be expressed in unmistakable terms."
If the order, as it so recites, is not binding on those who did not sign the conventional agreement, it is even the less binding upon nonsigning landowners or those having reversionary interests in minerals. Attempts on the part of mineral owners to perpetuate or to extend the lives of their mineral interests have frequently been held ineffective. An "obstacle" theory for suspension of liberative prescription was not sustained in Gayoso Co. v. Arkansas Natural Gas Corporation, 176 La. 333, 145 So. 677, and attempts at the reservation of outstanding reversionary mineral interests were held ineffective in Liberty Farms v. Miller, 216 La. 1023, 45 So.2d 610; Hicks v. Clark, 225 La. 133, 72 So.2d 322.
In Placid Oil Co. v. George, 49 So.2d 500, 505, this court held that the execution of a conventional pooling agreement was insufficient in itself as an acknowledgment to interrupt the tolling of prescription. In the course of its opinion, this court stated:
"We think it is well established by our jurisprudence that the acknowledgment contemplated by the codal article must comply with certain very definite requirements. The acknowledgment must be express; it must be certain; it must be definite; it must be accompanied by or coupled with the clear purpose and intention of the party to interrupt prescription by such an acknowledgment. These requirements have been considered and discussed by our Supreme Court in a number of *537 cases, among which we particularly note Frost Lumber Industries, Inc. v. Union Power Co., 182 La. 439, 162 So. 37; Bremer v. North Central Texas Oil Co., Inc., 185 La. 917, 171 So. 75; Goldsmith v. McCoy, 190 La. 320, 182 So. 519; Vincent v. Bullock, 192 La. 1, 187 So. 35; Goree v. Sanders, 203 La. 859, 14 So.2d 744."
While the Supreme Court, in the aforesaid case, had occasion to dismiss plaintiff's action upon writs issued to the Court of Appeal (221 La. 200, 59 So.2d 120), the aforesaid pronouncements of this court were unaffected. The dismissal was predicated upon the holding that plaintiff was not entitled to institute a concursus proceeding where its interest conflicted with the interests of some of those made parties to the proceeding.
We therefore conclude that Holt's voluntary action in signing the unitization agreement, even with the subsequent approval of the commissioner, was no more than a voluntary act upon his part and that he was, therefore, powerless to extend his mineral servitude by such voluntary act. The authorities holding where a pooling or unitization is effected by appropriate orders of the Commissioner of Conservation, the tolling of prescription is suspended or interrupted as to the properties included in such units, find no application to the facts as disclosed by the record here.
Moreover, we are unable to find, after a most careful search and study of the record, any impediment or obstacle that would have prevented or prohibited Holt or his assigns from exploring, searching, or drilling on plaintiff's 35.56 acres for oil, gas or other minerals, either before or after the promulgation of Commissioner's Order 96-G. Nor do we find any prohibition of such activities in the voluntary agreement. Defendant was at liberty, for a period of 10 years from the date of the creation and reservation of his mineral servitude to make appropriate explorations and carry on proper operations for the discovery and production of oil, gas or other minerals on plaintiff's property, which he failed to do. The conclusion is therefore inescapable that plaintiff's plea of prescription should have been sustained.
For the reasons assigned, the judgment appealed is annulled, avoided, reversed and set aside. It is now Ordered, Adjudged and Decreed that plaintiff's plea of 10 years' liberative prescription against the mineral reservation and servitude as retained by defendant J. E. Holt in that certain deed of October 25, 1943, wherein the said J. E. Holt conveyed to plaintiff Frank Alexander the
Northeast quarter of northwest quarter (NE ¼ of NW ¼) of Section 31, Township 17 north, Range 9 east, Richland Parish, Louisiana,
as recorded in Book 98, page 313 of the conveyance records of Richland Parish, Louisiana, be and the same is hereby decreed to have expired and prescribed and no longer in effect except as to the 4.44 acres thereof in a triangular form, situated in the northwest corner.
Accordingly, it is further Ordered, Adjudged and Decreed that said mineral servitude, as to the 35.56 acres of said tract, as well as the mineral deed executed by J. E. Holt and C. H. Murphy September 11, 1945, and recorded in Book 111, page 463, as well as the instruments predicated thereon and recorded in Book 163, page 599; Book 169, page 80; Book 169, page 520; and Book 170, page 143 of the conveyance records of Richland Parish, Louisiana, insofar as the same affect the 35.56 acres aforesaid, be and they are hereby declared null and void and ordered cancelled and erased from said records.
It is further Ordered, Adjudged and Decreed that the defendants pay all costs, including the cost of this appeal; and that plaintiff's right for an account be reserved.
Reversed and rendered.

*538 On Motion for Rehearing
PER CURIAM.
Moreover, in further substantiation of the correctness of the conclusions reached and expressed in our original opinion, it may be pointed out that the tract of 35.56 acres of land herein involved lies wholly and entirely without the limits and confines of the producing area of the Delhi Field, as recognized and determined by orders of the Commissioner. Nor has this tract been subjected to the authority of the Commissioner through the issuance of any spacing, unitization or other orders. Therefore, it can only be concluded the order relied upon by the defendants is inapplicable to and has no effect upon the land involved so far as interrupting or suspending the running of prescription.
The motion for a rehearing is therefore denied.