HAMITER, Justice.
 

 In dispute herein is a one-half mineral interest in and to 51 acres of land, W. H. Elson and Investors Royalty Company, Inc., claimants of the interest having brought the suit against J. H. Mathewes, the landowner, to be judicially recognized as the owners thereof in equal proportions. As a defense the nonuse liberative prescription of 10 years was pleaded. The district court rendered judgment in favor of plaintiffs and the defendant is appealing.
 

 On May 27, 1937, a stipulation of facts discloses, J. H. Mattewes, as landowner, conveyed by a single instrument to W. H. Elson an undivided one-half interest in and to the oil, gas and other minerals in and under a tract of 91 acres, being the SEj4 of the NW1/) (40 acres) and a contiguous, irregularly shaped parcel of 51 acres (in dispute herein) in the of the Eji, all situated in Section 29, Township 19 North, Range 2 West, Lincoln Parish. By this transfer a mineral servitude, according to our jurisprudence, was created on the combined acreage. A few days later, through mesne conveyances, Investors Royalty Company, Inc. acquired one-half of such mineral interest (one-fourth of the whole).
 

 On February 20, 1943 J. H. Mathewes (the defendant) signed a mineral lease, having a primary term of 10 years, in favor of the Arkansas-Louisiana Gas Company, it covering the entire 91 acres.
 

 Under date of February 16, 1944 plaintiffs executed a similar lease, in favor of the same company and for the same term, covering only the 40 acres described as the SEj4 of the NWj4 of Section 29. The remaining 51-acre irregularly shaped parcel located in the of Ei/3 of Section 29 was not included therein.
 

 Thereafter, the Arkansas-Louisiana Gas Company, through a pooling and unitization agreement, completed the formation of a unit- for the drilling in search of gas, it being known as the Dowling Unit and comprising the Ej/á of Section 30 and the Wi/2 of Section 29, in Township 19 North, Range 2 West, Lincoln Parish, containing 640 acres, more or less. The unit, it is important to notice, did not include the 51 acres in contest herein, although it did contain the remaining 40 acres affected by
 
 *422
 
 the mentioned 91-acre mineral servitude. Plaintiffs executed one counterpart of the pooling and unitization agreement, while defendant and others signed another counterpart.
 

 Following the establishment of the Dowling Unit a well was drilled and completed thereon and produced gas in paying quantities until abandoned on July 1, 1946. It was not on any part of the 91-acre contiguous tract described in the 1937 mineral deed from defendant to W. H. Elson. In fact, there was no drilling at all on such tract within 10 years after the execution of the deed.
 

 Because- of this 10-year nonuse plaintiffs’ mineral servitude would have prescribed in its entirety in 1947 had it not been for the pooling and unitization counterparts signed by the parties in 1944 (in effect a joint contract) which, among other' things, stated: “ * * * This agreement is executed with the specific purpose and intent on the part of each of the parties hereto to acknowledge the ownership of each and all of the parties hereto of their respective interest in and to the oil, gas distillate, condensate and other minerals and mineral rights
 
 in the lands pooled herein,
 
 so as to interrupt the running of the liberative prescription of nonuse, applicable under the laws of Louisiana to mineral servitudes, and each monthly payment of any of the royalties or other benefits hereunder, shall be considered and accepted by all parties as new acknowledgment made with the purpose and intent of interrupting said prescription as to all rights of all of the parties hereto under" all the servitudes.” As a result of such agreement, particularly the quoted provisions, it is certain that prescription as to that part of the servitude covering the 40 acres situated within the unit was interrupted in 1944. In this connection defense counsel state in their brief: “ * * * it might be pointed out that defendant does not dispute the mineral title of plaintiffs as to the 40 acres of the 91 atre contiguous tract of land which had been included in • the Dowling Unit but on the contrary recognizes the title of plaintiffs to i/£ of the minerals in that 40 acre tract of land, which is not involved in this suit.”
 

 Plaintiffs maintain that prescription was. also interrupted as to the remaining 51 acres. They argue that their mineral servitude, according to the jurisprudence, cannot be divided and must stand or fall as a whole; and that, therefore, the drilling of the Dowling Unit well in 1944, pursuant to the leases and the unitization agreement, constituted a user of, and the interruption of prescription respecting, the entire servitude even though the well was not on any part of the 91 acres.
 

 A grant by a landowner of a mineral interest, under the established jurisprudence of this court, does create a servitude which is indivisible in the sense
 
 *424
 
 that the grantor thereafter cannot contract independently with a third person to effect a division of that servitude to the disadvantage of the mineral owner. But there is no law prohibiting the landowner and the mineral owner from entering into a contract with each other, as was done by and between these litigants, whereby a division or a reduction of the servitude results.
 

 Here, plaintiffs and the defendant, in the unitization and pooling contract, agreed to an interruption of prescription as to the 40-acre tract within the Dowling Unit, thereby extending the servitude as to it. However, the agreement made .no mention of, and did not relate to, the remaining 51 acres (involved in this suit) ; And this omission along with the failure to drill on or otherwise use the 91 acres during the prescriptive period, resulted in 1947 in an extinguishment-of the servitude to such extent. Of no importance, in this connection, are the mineral leases granted to the Louisiana-Arkansas Gas Company in 1943 and 1944; they were separately executed and, hence, did not evidence any agreement as between the litigants.
 

 Pertinent to the question of the effect of contractural relations respecting a mineral servitude between the holder thereof and the landowner, and militating against the contention of plaintiffs herein that their servitude was impossible of division, is our decision in Spears v. Nesbitt, 197 La. 931, 2 So.2d 650, 654. Therein, we said:
 

 “When the land owner (plaintiff’s ancestor in title) and the defendant executed the two leases of August 25, 1933, dividing the acreage affected by the Trinity Company’s servitude, they clearly indicated they did not intend to have the operations on either lease block affect the rights of the land owner or the mineral owners under the other. They in effect divided the company’s servitude into that acreage located in the western half and that located in the eastern half.
 

 “We therefore conclude that the trial judge erred in his conclusion that the production of gas on the western half of Section 29, Township 20 North, Range 5 West, Claiborne Parish, had the effect of interrupting the prescription on the entire servitude held by the Trinity Royalty Company, Inc.”
 

 In support of their position plaintiffs have cited the following decisions: Lee v. Giauque, 154 La. 491, 97 So. 669; Sample v. Whitaker, 172 La. 722, 135 So. 38; Connell v. Muslow Oil Co., Inc., 186 La. 491, 172 So. 763; Levy v. Crawford, Jenkins & Booth, 194 La. 757, 194 So. 772; Ohio Oil Co. v. Cox, 196 La. 193, 198 So. 902; Robinson v. Horton, 197 La. 919, 2 So.2d 647; Hodges v. Norton, 200 La. 614, 8 So.2d 618; Lenard v. Shell Oil Co., 211 La. 265, 29 So.2d 844; Mays v. Hansbro, 222 La. 957,
 
 *426
 
 64 So.2d 232; Ohio Oil Co. v. Kennedy, La. App., 28 So.2d 504. We have carefully considered the opinion in each of those cases and do not find any to be apposite here. Each involved a different factual situation, and none presents a similar legal question.
 

 In an alternative demand plaintiffs are claiming one-half of all gas and condensate royalties accruing to the credit of the mentioned 51-acre tract under the terms of the 91-acre lease executed by defendant alone in 1943 (which is still in force and effect), production pursuant thereto having been obtained during and after 1949. They assert that such lease necessarily covered their one-half mineral interest in and to the 51 acres and that they have ratified and adopted it. We find no merit in the claim. While the lease was not specifically limited to the one-half mineral interest then owned by defendant, it does not purport to have been executed for the benefit of plaintiffs. Moreover, the record contains nothing indicating a ratification thereof by plaintiffs other than a mere allegation in their petition, made in the alternative long after prescription had accrued.
 

 For the reasons assigned the judgment appealed from is reversed and set aside and there is now judgment rejecting the demands of plaintiffs and dismissing the suit at their costs.
 

 FOURNET, C. J., concurs in the decree.