87 So.2d 721

**JUMONVILLE PIPE AND MACHINERY CO., Inc.**

v.

**The FEDERAL LAND BANK OF NEW ORLEANS et al.**

No. 42119.

March 26, 1956.

Rehearing Denied May 7, 1956.

Harold Moses, Doyle, Smith & Doyle, Donald W. Doyle, New Orleans, for defendants-appellants.

Obier & Middleton, Plaquemine, for appellee.

MOISE, Justice.

This case is on appeal by the mineral and royalty owners from the judgment of the district court cancelling certain instruments from the Conveyance Records of the Parish of Iberville, Louisiana, to the extent that they evidence the right and interest of defendant-appellants in the property in dispute.

The case is presented on an agreed statement of facts, supported by exhibits. There is no dispute between plaintiff and defendants as to the facts.

The following question is presented to the Court, to which we must apply the law:

"Is the ten year prescription provided by Article 789 of the Revised Civil Code interrupted as to the entirety of plaintiff's lands, on which there had been no production and on which defendant Federal Land Bank of New Orleans reserved one-half of the min-

erals, by production not on plaintiff's lands but within a unitized forced pooling area established by the Commissioner of Conservation which included parts of plaintiff's acreage?"

In his judgment, the trial judge said:

" * * * it is the opinion of the Court that judgment should be rendered in favor of Plaintiff Jumonville Pipe and Machinery Company, Inc., and against the Defendants, The Federal Land Bank of New Orleans, Humble Oil and Refining Company, George H. Echols, I. R. Price, J. B. Ferguson, Jr., Ford M. Graham and W. V. Conover, *decreeing* that the mineral rights and servitudes reserved by The Federal Land Bank of New Orleans in the sales to said Jumonville Pipe and Machinery Company, Inc. on January 20, 1938 of the property described in Article 8 of the petition herein have prescribed for nonuse as to all lands lying outside of said drilling or pooling Units No. 3 and No. 5 and fully described in Article 35 of the petition herein and that said servitudes have been extinguished and lost to Defendants by prescription liberandi causa resulting from nonuse of same for ten years and have reverted to Plaintiff as the owner of said land; *and ordering* the cancellation from the Conveyance Records of Iberville Parish as purporting to affect the property lying outside of said Units 3 and 5 and described as follows:"

A description of the property then follows in the judgment of the trial judge.

From that judgment, the Federal Land Bank of New Orleans, I. R. Price, Ford Graham, Geeorge H. Echols, J. B. Ferguson, Jr. and W. V. Conover prosecute to this Court a suspensive appeal.

The trial judge has presented an able and well analyzed opinion. His findings correctly portray, in our opinion, the law and the evidence on the subject. In the stipulation agreed upon by the parties, we find the following facts germane to the subject:

On January 20, 1938, the Federal Land Bank of New Orleans sold to Jumonville Pipe and Machinery Co., Inc. seven tracts of land located in Iberville Parish, by seven separate deeds. The Bank reserved to itself one-half of the minerals. At the time of suit the property was, after transfer and retransfer, owned by the original vendee. Humble Oil and Refining Company was the assignee of leases executed by the Federal Land Bank. The other defendants were royalty owners. No development had been secured on plaintiff's seven tracts.

On January 15, 1944, Humble Oil and Refining Company received a permit to drill in the Laurel Ridge Field. Adam Hymel No. 1 was brought in and has been continuously producing gas and distillate in paying quantities since October 21, 1946. This well was not on plaintiff's property, but it was within the same field.

On July 15, 1944, Humble Oil and Refining Company received a second permit to

drill. C. G. Robinson No. 1 was brought in and has been producing gas and distillate in paying quantities since November 21, 1946. This well was in the Laurel Ridge Field, but it was not on plaintiff's land.

On April 29, 1947, under and in accordance with the authority granted him by Act No. 157 of 1940, LSA–R.S. 30:1 et seq., the Conservation Commissioner issued Orders No. 131–3 and No. 131–5. These were integrating forced pool orders which included Units No. 3 and No. 5 of the Laurel Ridge Field in Iberville Parish. Unit No. 3 contained a portion of each of plaintiff's seven tracts of land, and Adam Hymel No. 1 was located on it. Unit No. 5 contained a portion of six tracts belonging to plaintiff, and C. G. Robinson No. 1 was located on it.

Plaintiff contends that there has been a division of the advantages of servitude as it affects his lands, and that while prescription was interrupted on the mineral rights covering the land inside the units prescription was not interrupted as it bore on the land outside of the forced units, ten years having elapsed since the reservation of 1938.

Defendants argue that production from a well located in a pooled unit created by an integration order of the Commissioner of Conservation constitutes production from all property within the unit, including property subject to a mineral servitude under the provisions of Act 157 of 1940, LSA–R.S. 30:10, subd. A(1) (b), and constitutes user of the mineral servitude as to the property subject thereto, both inside and outside of the unitized area; and, that this is true whether the well be located on the property subject to said mineral servitude or not.

Article 789 of the LSA–Civil Code provides:

"A right to servitude is extinguished by the non-usage of the same during ten years."

LSA–Civil Code, Article 656, states:

"The rights of servitudes, considered in themselves, are not susceptible of division, either real or imaginary. It is impossible that an estate should have upon another estate part of a right of way, or of view, or any other right of servitude, and also that an estate be charged with a part of a servitude.

\* \* \* \* \* \*

"From thence it follows that a servitude existing in favor of a piece of land, is due to the whole of it, and to all the parts of it, so that if the land be sold in parts, every purchaser of a part has the right of using the servitude in toto."

In Article 657 of the LSA–Civil Code, we find:

"Though the right of servitude be indivisible, and must be established for the whole, and not for a part, nothing prevents the *advantage* resulting from it from being divided, if it be susceptible of division; as, for example, the right of taking a certain number of loads of earth from the land of anoth-

er, or of sending to pasture a certain number of animals on the land of another." (Italics ours.)

In Spears v. Nesbitt, 197 La. 931, 2 So. 2d 650, we held that the parties themselves had in effect divided a servitude for the purpose of development.

Again, in Ohio Oil Co. v. Ferguson, 213 La. 183, 34 So.2d 746, we held that there was nothing so sacramental in the doctrine of indivisibility of servitudes as to prevent the division of the advantage of a servitude, if it be susceptible of division, by agreement of the interested parties. We further held that where acreage covered by a servitude is parceled and owned by different parties, each party has the right to explore, but that if any party does not exercise his right on his parcel within ten years, the right is lost to him.

Act 157 of 1940 had for its purpose the conservation of the oil and gas resources of the State of Louisiana and the prevention of waste and depletion thereof. In Hunter Co., Inc., v. McHugh, 202 La. 97, 11 So.2d 495, this act was declared constitutional. To accomplish the purpose of the act, the Commissioner of Conservation is permitted to establish drilling units, unitize acreage, and control and allocate production. These orders become mandatory after notice is given and the necessity thereof is shown. If, as in the present case, the landowner does not consent to the arrangement, there is forced pooling. In the case of Le Blanc v. Danciger Oil & Refining Co., 218 La.

463, 49 So.2d 855, 857, this Court made the following pronouncement:

" * * * The lawmakers in adopting Act No. 157 of 1940 as a conservation measure never intended that the orders of the Commissioner of Conservation creating pooling units pursuant thereto should ever have any effect beyond the limits of such units, and the Commissioner, in issuing Order No. 93–1 on May 18, 1945, creating the 40-acre pooling unit involved in this case not only never intended that it should, but he has not, in fact, endeavored to exercise any jurisdiction beyond the limits of this unitized area. * * * "

In the unitization orders herein involved, we find the folllowing stipulation:

" * * * the separately owned property interests embraced therein are hereby pooled, unitized, and consolidated into one unit for all purposes of lease and sublease contracts covering said unit, which shall be treated, developed, and operated as one lease, one unit, one property, and one tract for the production of gas and condensate from the 10,600-Foot Sand of the Laurel Ridge Field; and drilling operations, drilling, and production on any of the tracts included within said unit shall constitute drilling operations, drilling, and production under the terms of each and every one of said lease or sublease contracts affecting the property *included within said unit*. All royalties ac-

cruing under lease and sublease contracts on all production of gas and condensate from the 10,600-Foot Sand shall be treated as an entirety and shall be divided among and paid to the separate owners thereof in the proportion that the acreage (mineral rights subject to lease or sublease of each royalty or overriding royalty owner in said unit) bears to the total acreage in said unit." (Italics ours.)

The above pronouncement is that the provision applied only to those parts of plaintiff's tracts within Unit No. 3 and Unit No. 5. By its wording it cannot apply to plaintiff's acreage outside its area. As stated by the trial judge, the issuance of the orders by the Commissioner of Conservation did not result—(1) in the creation of any obstacle which prevented the Federal Land Bank of New Orleans, or any other interested party, from using in the area lying outside the drilling units the servitude in the manner contemplated by the reservation, or (2) have the slightest effect upon their right to do so.

Defendants' lessee, Humble Oil and Refining Company, applied to the Commissioner of Conservation for establishment of Units No. 3 and No. 5 (stated in brief). The only objection raised was by the owner of the land, who feared interrupting prescription. There was no objection on the part of the other defendants.

Therefore, the orders of the Commissioner of Conservation had the effect of reduc-

ing the acreage covered by the original mineral reservation by the Federal Reserve Bank and extending the prescription as to the portions of the seven tracts included within Pooling Units No. 3 and No. 5. However, the prescription provided by the articles of the Revised Civil Code, cited supra, is applicable to the mineral servitude existing on the portions of plaintiff's seven tracts located outside of the pooling units. See, Ohio Oil Co. v. Kennedy, La.App., 28 So.2d 504, certiorari denied, which held that Act No. 157 of 1940 did not repeal the articles of the Civil Code with respect to prescription.

The facts in the case of Childs v. Washington, 229 La. 869, 87 So.2d 111, are similar to those in the instant matter. In an ably reasoned decision, Chief Justice Fournet stated:

"It logically follows, therefore, that if the landowner and the mineral owner can by agreement extend the servitude as to a portion only of the acreage without by such act interrupting the tolling of prescription as to the servitude on the remainder of the tract, as held in Elson v. Mathewes [224 La. 417, 69 So.2d 734], and if the mineral owner can divide the advantages of a servitude by assigning to a third person all of his interest in a designated portion of the land affected by the servitude and create a situation whereby user of a portion would not hold the remainder, as held in Ohio Oil Co. v. Ferguson

[213 La. 183, 34 So.2d 746], and Byrd v. Forgotson [213 La. 276, 34 So.2d 777], then clearly when the Commissioner of Conservation, acting for the State in the exercise of its police power, by his orders and after due hearing, included within a unit or units portions of a tract as to which owners had failed to agree to pool their interests for development purposes, his act produced the same result as if the parties had formed a drilling unit by convention and for development purposes had reduced the servitude to that extent."

In the case of Elson v. Mathewes, 224 La. 417, 69 So.2d 734, 735, we held:

"Here, plaintiffs and the defendant, in the unitization and pooling contract, agreed to an interruption of prescription as to the 40-acre tract within the Dowling Unit, thereby extending the servitude as to it. However, the agreement made no mention of, and did not relate to, the remaining 51 acres (involved in this suit); and this omission along with the failure to drill on or otherwise use the 91 acres during the prescriptive period, resulted in 1947 in an extinguishment of the servitude to such extent. * * *"

Therefore, it should logically follow that the mineral servitude on the portions of the seven tracts included in Orders Nos. 131–3 and 131–5 has been extended by production and kept alive. The servitude on the portions of the seven tracts not included in the orders have become extinguished because of non-use during ten years.

The case of Hunter Co., Inc., v. Shell Oil Co., Inc., 211 La. 893, 31 So.2d 10, relied on by the defendants, is not applicable. The orders of the Conservation Commissioner were similar to those in the present controversy, but the case involved the indivisibility of the obligation of drilling under a contract of lease, not a reduction of acreage covered by a mineral servitude.

For the reasons assigned, the judgment of the trial court is affirmed at defendants' costs.

McCALEB, J., concurs for the reasons assigned in Childs v. Washington, 229 La. 869, 87 So.2d 111.