92 So.2d 762 (1957)
James Herman BROWN et al., Plaintiffs-Appellees,
v.
J. Earl MAYFIELD, Defendant-Appellant.
No. 8638.
Court of Appeal of Louisiana, Second Circuit.
February 5, 1957.
*763 Meadors, Shaw & Meadors, Homer, for appellant.
Blanchard, Goldstein, Walker & O'Quin, Shreveport, for appellees.
GLADNEY, Judge.
This is a petitory action by plaintiffs to be decreed the owners of ¼th of the mineral rights hereinafter described and which were acquired by their predecessor in title, A. L. Brown, on March 21, 1934, from the present defendant, J. Earl Mayfield. The principal issue relates to a plea of prescription by defendant based on LSA-C.C. art. 789, for non-use of ten years of the servitude so transferred. On June 1, 1949, defendant brought a jactitory action against plaintiffs and secured a default judgment therein on September 9, 1949. This action was then initiated by plaintiffs to gain recognition of their interest in the minerals, and to have *764 annulled the judgment rendered in the previous suit between the parties. The trial court sustained an exception of no cause or right of action filed in this cause, which ruling on appeal to this court was reversed. See: 45 So.2d 912. Upon the remand and following a trial on the merits, the plea of prescription was denied and judgment rendered recognizing plaintiffs to be the owners of ¼ of the minerals on the following described lands, situated in Claiborne Parish, Louisiana:
"South Half of Southeast Quarter of Southeast Quarter (S ½ of SE ¼ of SE ¼) and two (2) acres on East end of South Half of Southwest Quarter of Southeast Quarter (S ½ of SW ¼ of SE ¼), Section Twenty-Seven (27); and Northeast Quarter of Northeast Quarter (NE ¼ of NE ¼) and Southeast Quarter of Northeast Quarter (SE ¼ of NE ¼) less four (4) acres in Southwest Corner of the North Half of Southeast Quarter of Northeast Quarter (N ½ of SE ¼ of NE ¼), Section Thirty-Four (34), and two (2) acres in Northeast Corner of the Northwest Quarter of Northeast Quarter (NE ¼ of NE ¼) and North Half of Northeast Quarter of Southeast Quarter (N ½ of NE ¼ of SE ¼), Section Thirty-Four (34), Township Twenty-Three (23) North, Range Eight (8) West."
The decree of the trial court also annulled and set aside the default judgment. From the judgment so rendered, defendant has appealed.
The question raised as to the validity of the judgment of September 9, 1949, no longer presents a substantial issue. The opinion of this court reported in 45 So.2d 912 effectively ruled on this point, and counsel for the defendant concede as much. Without further discussion, therefore, we hold that portion of the judgment appealed from was correctly determined by the trial court.
The main and only other substantial issue pertains to the extinguishment vel non in whole or in part of the servitude transferred March 21, 1937. The material facts are contained in a stipulation between counsel.
There has been no drilling or production on any of the lands herein involved. On February 6, 1942 the Department of Conservation issued Order No. 35, providing regulations for production from and spacing of wells drilled in the Pettit lime formation of the Haynesville field, which order affected the entire SE ¼ of Section 23, Township 23 North, Range 8 West, but none of the other land involved in this suit. This order described the E ½ and the W ½ of said quarter section as separate eighty-acre drilling units upon which only one well might be drilled for production from the Pettit formation. The order did not impose pooling and integration of the separately owned tracts comprising the production units. The same end was accomplished by conventional agreements between the parties so affected. Thus, in November 1943, plaintiffs and other mineral owners executed a contract with the operators of the units to pool and unitize their mineral rights as embraced in the production units so created by the Department of Conservation. The defendant was not a signatory to the same contract signed by plaintiffs, but later, on March 25, 1944, the defendant executed a somewhat similar agreement. The difference in the confection of the two contracts will be hereinafter pointed out. A producing well was completed in 1943 on the E ½ of the SE ¼ and has continued to produce from the Pettit formation until the present time; and in 1944 a producing well from the Pettit formation was completed on the drilling unit comprising the W ½ of the SE ¼. It should be noted at this point that twenty acres of the mineral rights herein involved lie within the E ½ of the SE ¼ and two acres lie within the W ½ of the SE ¼. Thus, twenty-two acres of the mineral rights in dispute are within the production units created by Conservation *765 Order No. 35 and the remainder of the land herein involved, constituting ninety-eight acres, is outside of the units.
Plaintiffs and defendant received royalties from the production of the wells on the units until the filing of the jactitory action between the parties. Payment of royalties to plaintiffs and defendant was computed with reference to their ownership of ¼ and ¾ths of the mineral rights, respectively, in the twenty-two acres situated within the two drilling units.
The legal issue so raised is brought into focus by the plea of prescription of ten years non-user filed on behalf of defendant, in which plea it is pointed out that the mineral rights in question here were transferred by the defendant March 21, 1934, and there has been no drilling in search of minerals on any portion of the land so transferred. Therefore, it is contended there has been no suspension, extension or interruption of prescription for any cause whatsoever. Plaintiffs argue that LSA-C.C. art. 656 declares the rights of servitude considered in themselves are not susceptible of division, either real or imaginary, and that by reason of Conservation Order No. 35 and the integration contracts executed by plaintiffs and defendant, there has been an interruption of the prescription.
In the recent case of P. F. Childs v. Washington, 1956, 229 La. 869, 87 So.2d 111, the Supreme Court held that a mineral servitude was kept alive and extended by production as to portions of a tract of land affected by the servitude which, by orders of the Commissioner of Conservation had been included within previously established drilling units, but as to the remainder of the tract, not included within such units, the servitude was extinguished because of nonuse during a period of ten years. Pointing out that there were numerous expressions found in our jurisprudence maintaining the indivisibility of a servitude and to that effect citing Hunter Co. v. Shell Oil Co., 211 La. 893, 31 So.2d 10; LeBlanc v. Danciger Oil & Refining Co., 218 La. 463, 49 So.2d 855; Sanders v. Flowers, 218 La. 472, 49 So.2d 858; Sample v. Whitaker, 172 La. 722, 135 So. 38; Clark v. Tensas Delta Land Co., 172 La. 913, 136 So. 1; Patton v. Frost Lumber Industries, 176 La. 916, 147 So. 33; Childs v. Porter-Wadley Lumber Co., 190 La. 308, 182 So. 516, the decision noted that under LSA-C.C. art. 657 and its holdings in Ohio Oil Co. v. Ferguson, 213 La. 183, 34 So.2d 746, Byrd v. Forgotson, 213 La. 276, 34 So.2d 777, and Elson v. Mathewes, 1953, 224 La. 417, 69 So.2d 734, 735, the advantages resulting from a servitude are susceptible of division. Chief Justice Fournet, as the organ of the court, then went on to say the land owner and mineral owner can by agreement extend the servitude as to a portion of the acreage without interrupting prescription as to the servitude on the remainder of the tract.
Jumonville Pipe & Machinery Co., Inc., v. Federal Land Bank of New Orleans, 1956, 230 La. 41, 87 So.2d 721, presents a decision wherein the Supreme Court held that production from a well located in a pooled unit created by an integration order of the Commissioner of Conservation constituted production from all property within the unit, including property subject to the mineral servitude, and constituted user of the mineral servitude as to property subject thereto, and inside the unitized area, but did not constitute such user as would interrupt prescription as to the land outside of the unit. The decision pointed out the following language of the opinion in LeBlanc v. Danciger Oil & Refining Co., 1950, 218 La. 463, 49 So.2d 855, 857:
"* * * The lawmakers in adopting Act No. 157 of 1940 [LSA-R.S. 30:1 et seq.] as a conservation measure never intended that the orders of the Commissioner of Conservation creating pooling units pursuant thereto should ever have any effect beyond the limits of such units, and the Commissioner, in issuing Order No. 93-1 on May 18, 1945, creating the 40-acre pooling unit involved in this case not *766 only never intended that it should, but he has not, in fact, endeavored to exercise any jurisdiction beyond the limits of this unitized area. * * *"
In Elson v. Mathewes, 1953, 224 La. 417, 69 So.2d 734, 735, it was held that due to the agreement to pool and unitize therein under consideration by the court, the servitude was extended as to the tract incorporated in the unit, but the failure of the agreement to mention the remaining acreage affected by the mineral servitude, along with failure to use the remaining acreage during the prescriptive period, resulted at the end of ten years in the extinguishment of the servitude to the extent of the acreage outside of the unit. With reference to the problem of indivisibility of a servitude, Justice Hamiter, who wrote the opinion, commented:
"A grant by a landowner of a mineral interest, under the established jurisprudence of this court, does create a servitude which is indivisible in the sense that the grantor thereafter cannot contract independently with a third person to effect a division of that servitude to the disadvantage of the mineral owner. But there is no law prohibiting the landowner and the mineral owner from entering into a contract with each other, as was done by and between these litigants, whereby a division or a reduction of the servitude results."
From the foregoing authorities we deduce that as to the acreage contained in a production unit, production from a well timely located in such a pooled unit without regard to whether or not the unit was created by an integration order of the Commissioner of Conservation, constitutes production from all of the separately owned acreage within the unit and, therefore, there is an interruption of the servitude, but this is not necessarily true as to the land outside of the unit. The servitude will not be extended beyond the unit by production on the unit, except where the parties concerned clearly indicate their intention for an extension of or interruption of the servitude on the land outside of the unit. Such an acknowledgment should conform to the rule stated by this court in Placid Oil Co. v. George, 1950, 49 So.2d 500, 505, reversed on other grounds, 1952, 221 La. 200, 59 So.2d 120:
"We think it is well established by our jurisprudence that the acknowledgment contemplated by the codal article must comply with certain very definite requirements. The acknowledgment must be express; it must be certain; it must be definite; it must be accompanied by or coupled with the clear purpose and intention of the party to interrupt prescription by such an acknowledgment. These requirements have been considered and discussed by our Supreme Court in a number of cases, among which we particularly note Frost Lumber Industries, Inc., v. Union Power Co., 182 La. 439, 162 So. 37; Bremer v. North Central Texas Oil Co., Inc., 185 La. 917, 171 So. 75; Goldsmith v. McCoy, 190 La. 320, 182 So. 519; Vincent v. Bullock, 192 La. 1, 187 So. 35; Goree v. Sanders, 203 La. 859, 14 So.2d 744."
Counsel for appellees insist the separate pooling agreements executed by plaintiffs and defendant are counterparts and the effect of the language in each is substantially the same. We disagree with this position. Reference is had to paragraph number 2 of each contract. The agreement signed by the plaintiffs, but not by the defendant, stipulated:
"Operations for drilling or the drilling in search for or the production of oil, gas or other minerals, under the terms of this agreement, on any part of said eighty-acre unit shall be taken and accepted as drilling, producing and lease operations under the terms of each and all of the leasehold contracts *767 referred to above, and such operations for drilling, drilling, or production on any part of said eighty-acre unit shall have the same effect as if such operations for drilling or drilling had been done on or such production obtained from each and all of the tracts in said eighty-acre unit to the end that such operations for drilling, drilling, or production shall have the effect of continuing all of the leasehold contracts above mentioned in full force and effect as to all of the lands described in this pooling agreement, and as to all of the other lands covered by any and all of said leasehold contracts so long as there may be any operation for drilling, drilling, or production hereunder, or so long as First Party complies with the provisions of the second paragraph of section numbered four hereof; subject, however, to the implied obligation to develop the lands covered by said leasehold contracts, but not included in the said eighty-acre unit, as a reasonably prudent operator would do under the same or similar conditions." (Italics ours.)
In the contract executed by the defendant and to which the plaintiffs were not parties, in lieu of the words: "and as to all the other lands covered by any and all of the said leasehold contracts" there is substituted the descriptive words of the land embraced in the unit. Manifestly, the deletion and substitution represented limitation to and not extension beyond the production units. In other respects the agreements are more or less the same. In Placid Oil Co. v. George, supra [221 La. 200, 59 So.2d 125], the Supreme Court said, with reference to the contention that certain contracts were counterparts:
"The document signed by the Davises was not a counterpart, as asserted, of the proposed agreement circulated by Placid Oil Company and executed without modification by defendants George and Oil Investments, Inc. The very material provision relating to the interruption of prescription was deleted therefrom before the Davises signed; and, as a result of this deletion there was not a uniting of the will of all of these defendants on the same points, such as is essential in the formation of a valid contract. [LSA-] Civil Code Article 1798 et seq."
The effect of the deletion of the words "All of the other lands covered by any and all of said leasehold contracts" and the insertion in place of said words the description only of the acreage embraced within the two drilling units, plainly shows the intent of the signers to restrict the effect of said contract to the acreage included within the drilling units. It is, therefore, our holding that defendant has not acknowledged, interrupted, or extended prescription through the execution of the aforesaid agreements.
From the appellees comes the complaint that defendant, over objection, gave inadmissible testimony in order to show intention and purpose for entering into the pooling contracts. We have reviewed the evidence and consider it irrelevant, inasmuch as the written words of the contracts are plain and free from ambiguity. The plaintiffs have not been prejudiced by the testimony in question and for these reasons we find no good reason for passing upon the contention.
There is no merit in the contention by appellees that defendant has accepted royalties from the two wells continually from May 29, 1944. These payments were derived only from the production attributed to the twenty-two acres in the production units. Plaintiffs and defendant were entitled to such payments. In the absence of a plea of estoppel the point is untenable and can in no wise be considered as affecting the plea of prescription.
The conclusions so reached require that the claim of plaintiffs should be recognized as owners of one-fourth (¼) of the minerals *768 of the twenty-two acres in the two production units, but not as to the lands outside of the units.
As a result of our findings herein the judgment must be affirmed in part and reversed in part. We deem it proper to recast the judgment from which appealed so as to read as follows:
It is ordered, adjudged and decreed that the judgment rendered September 9, 1949, in the proceeding styled "James Herman Brown, et al. vs. J. Earl Mayfield", No. 18,181 on the docket of the Second Judicial District Court of Claiborne Parish, be and it is hereby annulled and decreed void, and the Clerk of said court is hereby ordered to cancel and erase the same from the records.
It is further ordered, adjudged and decreed that there be judgment in favor of plaintiffs and against the defendant, decreeing James Herman Brown and Mrs. Mary Brown Cowden to be the owners of: One Fourth (¼) of the oil, gas and other minerals in and under and that which may be produced from the following lands, situated in Claiborne Parish, Louisiana:
"South Half of Southeast Quarter of Southeast Quarter (S ½ of SE ¼ of SE ¼) and two (2) acres on East end of South Half of Southwest Quarter of Southeast Quarter (S ½ of SW ¼ of SE ¼), Section Twenty-Seven (27), Township Twenty-Three (23) North, Range Eight (8) West",
and that such mineral servitude is now in full force and effect.
It is further ordered that the exceptions of prescriptions of ten years liberandi causa, filed herein on December 6, 1949, be maintained and that there be judgment in favor of defendant and against the plaintiffs, rejecting the latters' demand as to one-fourth (¼) of the minerals in and pertaining to:
"Northeast Quarter of Northeast Quarter (NE ¼ of NE ¼), and Southeast Quarter of Northeast Quarter (SE ¼ of NE ¼), less four (4) acres in Southwest Corner of the North Half of Southeast Quarter of Northeast Quarter (N ½ of SE ¼ of NE ¼), Section Thirty-Four (34), and two (2) acres in Northeast Corner of the Northwest Quarter of Northeast Quarter (NW ¼ of NE ¼) and North Half of Northeast Quarter of Southeast Quarter (N ½ of NE ¼ of SE ¼), Section Thirty-Four (34), Township Twenty-Three (23) North, Range Eight (8) West, situated in Claiborne Parish, Louisiana."
It is further ordered that plaintiffs-appellees pay all costs of these proceedings, including costs of this appeal.
AYRES, J., is recused.