165 So.2d 43 (1964)
Winston J. FREY, Plaintiff-Appellee,
v.
Maurice MILLER et al., Defendants-Appellants.
No. 1092.
Court of Appeal of Louisiana, Third Circuit.
March 24, 1964.
On Rehearing May 28, 1964.
Rehearing Denied June 17, 1964.
Wesley H. Clanton, Guillory, Guillory & Guillory, by Isom J. Guillory, Eunice, Aaron & Aaron, by J. Donald Aaron, Jr., Crowley, for defendants-appellants.
*44 Pugh, Buatt & Pugh, by Lawrence G. Pugh, Jr., Crowley, for plaintiff-appellee.
Before FRUGE, SAVOY and CULPEPPER, JJ.
FRUGE, Judge.
This is a suit to cancel royalty rights on part of a certain tract of land in Acadia Parish.
The facts have been stipulated. On July 6, 1951, plaintiff purchased a tract of land consisting of approximately 180 acres. The vendors reserved an undivided 1/16 royalty interest in the oil, gas and other minerals produced from the property. Drilling was commenced on the land during the ten years following the sale but no minerals were produced. However, production was obtained from an adjoining tract known as the Zaunbrecher Unit. On June 25, 1959, the Commissioner of Conservation included 26.65 acres of plaintiff's tract in the Zaunbrecher Unit. The well located in the unit was still producing when this suit was filed. After ten years had passed from the date of the original sale and royalty reservation, plaintiff brought this suit to cancel the royalty interest insofar as it related to that part of the tract located outside the Conservation Commissioner's unit. Defendants raised an exception of no cause of action, which was referred to the merits. The district court rendered judgment for plaintiff. From this judgment the defendant royalty owners appeal.
Plaintiff takes the position that the order of the Conservation Commissioner including part of the tract in the unit had the effect of dividing the royalty interest. He argues that since there has been no production on that part of the tract outside the unit the royalty interest as to that part has prescribed. Defendants maintain that production within the unit interrupted prescription on the entire 180 acre tract, even though the producing well was not located on any part of the tract.
Our research shows that this issue has never been decided by our courts. However, we think that the statutory law and prior jurisprudence indicate that prescription was interrupted on the entire 180 acre tract. Plaintiff's exception of no cause of action should have been maintained.
It is well settled that a mineral royalty is subject to the prescription of ten years liberandi causa if production of minerals from the land does not occur within that time. In certain situations, when a tract of land subject to a royalty interest or a part of it is included within a unit, a producing well within the unit but not on the tract will constitute production on the tract itself and will interrupt prescription on the entire royalty interest, even as to that part not included within the unit. Crown Central Petroleum Corp. v. Barousse, 238 La. 1013, 117 So.2d 575; Montie v. Sabine Royalty Co., La.App. (3rd Cir.), 161 So.2d 118.
Defendants cite Crown Central Petroleum Corp. v. Barousse, supra, in support of their position that prescription was interrupted on the entire 180 acre tract. In that case part of a tract subject to a royalty interest was included in a voluntary unit. A producing well was drilled within the unit but not on the tract subject to the royalty interest. The Supreme Court held that prescription on the royalty interest was interrupted on the entire tract subject to the interest. Although Crown Central Petroleum Corp. v. Barousse concerned a voluntary unit, the result should be the same when a Conservation Commissioner's unit is involved. A voluntary unit is created by conventional agreement; a conservation unit is one imposed on the land because of the state's strong public policy to prevent waste. We can see no reason why both should not have the same effect on royalty interests. This position is further strengthened by the fact that the Legislature, in adopting the Conservation Act, provided that "[t]he portion of the production allocated to the owner of each tract included in a drilling unit formed by a pooling order shall, when *45 produced be considered as if it had been produced from his tract by a well drilled thereon." LSA-R.S. 30:10(A)(1)(b). This shows a legislative intent to provide that production from a well in a Conservation Commissioner's unit is to be treated as production on every part of the land within the unit. Therefore, since production from the unit is attributable to that part of plaintiff's tract located within the unit, such production has the effect of interrupting prescription on the royalty interest on plaintiff's entire 180 acre tract.
Plaintiff contends that Crown Central Petroleum Corp. v. Barousse, supra, does not support defendant's position. He cites language in that case stating that decisions of the Supreme Court providing that a Conservation Commissioner's forced pooling order had the effect of dividing a mineral servitude "might be applicable to royalty rights as it could be plausibly argued that, when the Department of Conservation has issued orders unitizing only a part of land affected by mineral royalty, a division of the royalty is effected and that production from the unit, from a well not situated on any part of the land subjected to the royalty, does not interrupt prescription as to the royalty on the land outside the unit. However, we are not dealing in this case with unitization orders of the Conservation Department." Crown Central Petroleum Corp. v. Barousse, supra, at 117 So.2d 580. (Emphasis added). It is clear from that language that the issue presented in this case was not before the Court at that time. The language was dictum and the Court did not indicate how it would decide the issue. The Court merely stated that these cases "might" be applicable and that "it could be plausibly argued" that the royalty interest was divided. The Court did not so hold nor did it indicate that it would so hold.
Plaintiff takes the position that this case should be governed by the holdings of the Supreme Court in Childs v. Washington, 229 La. 869, 87 So.2d 111, and Jumonville Pipe & Machinery Co. v. Federal Land Bank, 230 La. 41, 87 So.2d 721. In those cases "the holding of the Court was that all lawful forced pooling orders which included part of land burdened by a mineral servitude effected a division of the servitude and that drilling and production upon lands included in the unit, but not upon property subjected to the servitude, did not interrupt the running of prescription as to the part of the servitude outside of the unit." Crown Central Petroleum Corp. v. Barousse, supra, 117 So.2d at page 580. But the Childs and Jumonville cases dealt with mineral servitudes; the case before us deals with a royalty interest. We feel that this is a distinguishing feature. "(T)he right to search and explore, which belongs to the owner of the servitude, is not given to the royalty owner; that the latter must await such time as the land has been developed, and his right is restricted to a sharing in production if and when it is obtained by the landowner or a lessee, Vincent v. Bullock [192 La. 1, 187 So. 35], supra; Union Sulphur Co. v. Andrau, 217 La. 662, 47 So.2d 38, and authorities cited therein." Le Blanc v. Haynesville Mercantile Co., Inc., 230 La. 299, 88 So.2d 377, 380; Crown Central Petroleum Corp. v. Barousse, supra. A servitude owner is capable of taking positive action with respect to his rights. He may exercise his rights by drilling a well and using his servitude. A royalty owner can do nothing to preserve the right. If there is production, prescription is interrupted; if nothing is done, his royalty rights are gone at the end of ten years. Since the Childs and Jumonville cases concerned servitudes, not royalty interests, we do not think that those decisions can be controlling in the case before us. Since royalties and servitudes are different kinds of interests, the rules applicable to one are not necessarily applicable to the other.
For the foregoing reasons the judgment of the district court is reversed. It is hereby ordered, adjudged and decreed that there be judgment in favor of the defendants sustaining their exception of no cause of action *46 and against the plaintiff dismissing plaintiff's suit. All costs are assessed to plaintiff.
Reversed and rendered.

On Rehearing.
En Banc.
TATE, Judge.
The trial court rendered judgment in favor of the plaintiff cancelling certain royalty interests burdening a portion of his land. In our original opinion, this court reversed.
We granted a rehearing because, upon further consideration, a majority of this court entertained some doubt as to whether we were correct in our original conclusion.
The facts are fully stated in our original majority opinion. As there stated, the essential issue concerns the prescribing or not of a mineral royalty interest insofar as burdening the portion of a parent tract outside of a compulsory conservation commissioner's unit created by virtue of LSA-R.S. 30:9, subds. B, D; 30:10, subd. (A)(1)(a).
The plaintiff sues to cancel such royalty interest insofar as it affects his land outside the unit. The royalty interest was reserved when the plaintiff purchased the 180-acre parent tract in 1951. Production has never been obtained from a well drilled upon acreage within the parent tract itself.
The royalty owners resist the suit for cancellation, contending that the running of prescription against them was interrupted by virtue of production obtained from a unit well on neighboring land. In 1959, some 26 acres of the parent tract had been unitized by commissioner's order in an 80-acre compulsory commissioner's unit surrounding this already-producing unit well. Since then, such 26 acres have been allocated and received a share of the unit well's production, in the proportion that the 26 acres bear to the entire 80-acre area of the unit.
Under our now well settled jurisprudence, a mineral royalty interest is a real right which entitles the owner to participate in production when and if production is obtained upon the land burdened with the royalty interest; this right prescribes in ten years in the event production of the minerals from the land does not occur within that period of time. Union Oil & Gas Corp. v. Broussard, 237 La. 660, 112 So.2d 96, 113; Vincent v. Bullock, 192 La. 1, 187 So. 35.
The central issue, then, is: Under the facts above set forth, does production from a unit well not situated on the parent tract, interrupt the running of prescription with regard to the royalty interest insofar as it burdens the portion of the parent tract outside the commissioner's unit?
To prevent waste and avoid the drilling of unnecessary wells, the Commissioner of Conservation is authorized to establish drilling units to include the maximum area which may be efficiently and economically drilled by one well. LSA-R.S. 30:9, subd. B. Only this unit well is permitted to be drilled within the area included within the unit, and the well must be located as ordered by the commissioner on the basis of geological and engineering evidence and the topographical conditions of the land within the unit. 30:9, subd. C (as amended in 1960).
The conservation statute further provides: "The portion of the production allocated to the owner of each tract included in a drilling unit formed by a pooling order shall, when produced be considered as if it had been produced from his tract by a well drilled thereon." LSA-R.S. 30:10, subd. (A)(1)(b).
It is by virtue of this provision that a share of the production from the unit well drilled on a neighboring tract, was allocated to the 26 acres of the present parent tract included within the drilling unit.
For the purposes of interrupting the running of royalty prescription against the entire *47 parent tract, the allocation to the 26 acres of a share of the production of the unit well, could logically be regarded as production from the parent tract itself, just as if a well had been drilled on the acreage of the parent tract. This, in fact, is how, in our original majority opinion, we interpreted the effect of unit production allocated to the parent tract acreage.
In so doing, we relied also upon Crown Central Petroleum Corp. v. Barousse, 238 La. 1013, 117 So.2d 575, which concerned the accrual of royalty prescription as to land of a parent tract outside a contractual unit voluntarily formed by the lessor and lessee interests (as distinguished from the compulsory commissioner's unit herein). There, our Supreme Court held that, in the absence of any agreement to do so, the formation of this voluntary unit did not have the effect of dividing the royalty interest between the acreage inside and that outside of the conventional unit. Therefore, production inside the unit did not maintain the royalty interest only as to the acreage included within it, but it interrupted royalty prescription as to the entire parent tract burdened by the royalty reservation, including the acreage both within and without the unit.
We originally deduced from the holding in Crown Central that, because of the nature of the mineral royalty interest, the Supreme Court intended the same general rule to apply as to interruption of prescription of such interests, whether a portion of the parent tract is included in a "contractual" unit, a "declared" unit,[1] or a "compulsory" drilling unit as here.
We recognized that, to some extent, our ruling was in conflict with the reasoning of the Supreme Court in Jumonville Pipe & Machinery Co. v. Federal Land Bank, 230 La. 41, 87 So.2d 721 and Childs v. Washington, 229 La. 869, 87 So.2d 111. These decisions dealt with the prescription of a mineral servitude, the latter interest being the right to go upon the land for the purposes of exploring for and reducing to possession the minerals under the property subject to the servitude (as distinguished from the mineral royalty interest with which we are here concerned). In the cited Supreme Court cases, the court held that a compulsory pooling order which included part of a tract burdened with a mineral servitude, had the effect of dividing the servitude; thus, drilling and production upon the lands included in the unit, but not upon property subject to the servitude, did not have the effect of interrupting the running of prescription as to the part of the servitude outside the unit.
We reasoned, however, that royalties and servitudes are different kinds of interests, so that the rules applicable to one are not necessarily applicable to the other. (For instance, to illustrate that different types of mineral rights may be treated differently, as to a mineral leaseas distinguished from a mineral servitude, operations within a compulsory commissioner's pooling unit including a portion of the property subject to a mineral lease, will maintain a lease in force as to that part of the leased land lying outside the unit as well as to that within it, even though the unit well is not drilled on the leased property itself. Le Blanc v. Danciger Oil & Refining Co., 218 La. 463, 49 So.2d 855.)
Upon further study and reconsideration, a majority of the court has concluded that, while there is much merit in the court's original view, nevertheless such is in conflict with the reasoning of the Supreme Court in the Jumonville Pipe and Childs decisions. In them, as stated, the court flatly held that a commissioner's conservation unit had the effect in law of dividing a mineral servitude insofar as the land within the unit and the land without it.
*48 Thus, for purposes of the interruption of prescription, drilling within the commissioner's unit but not on acreage subject to the servitude, was held to constitute a user only with respect to the servitude acreage within the conservation unit. In so holding, the Supreme Court explicitly rejected the perhaps equally logical argument that the user affecting any of the acreage within the conservation unit likewise affected all of the acreage within the drilling unit, insofar as constituting a user of the servitude of each entire tract which contributed acreage to the drilling unit.
It seems to us that the Supreme Court's choice between the opposing logics was dictated by the traditional civilian policy of restrictively interpreting interests which limit the full ownership of property and its free flow in commerce, a land policy which in the Louisiana mineral jurisprudence has evidenced itself by its thrust towards freeing the landowner by prescription of dormant mineral interests affecting his title. Daggett, Louisiana Mineral Rights (rev. ed., 1949), 16, 54, 264, 267.
In the present case, for instance, it could probably be argued with at least equal logic, as the original majority opinion held, that production from a well drilled within the drilling unit constitutes production from all of the acreage within the unit, and thus that such unit production interrupted prescription as to the royalty interest affecting each of the tracts which contributed acreage to the conservation unit. Thus, by the production from the conservation unit, the royalty interest is kept alive as to each entire tract (however extensive) which contributed acreage (however slight) to the commissioner's drilling unit.
Nevertheless, upon reconsideration, we believe that the rationable of the Childs and the Jumonville Pipe cases requires this court to hold that the effect in law of the creation of the commissioner's unit was to divide from the parent tracts the acreage included within such unitat least, for determining for purposes of prescription whether production from a unit well physically situated on acreage outside a given parent tract, nevertheless constitutes production which interrupts prescription of royalty insofar as such burdens any of the parent tract situated outside of the unit, simply because, by operation of the conservation law, the physical proceeds of production are allocated to the portion of the parent tract included within the drilling unit. See especially 87 So.2d 114-115, 87 So.2d 724-725.
Consistent with these decisions, Crown Central Petroleum Corp. v. Barousse can be construed as holding that the contractual unit there in question did not divide the royalty interests as between the acreage within that unit and the acreage without it. For a close examination of the Supreme Court's decision in that case, will indicate that such was based specifically upon the presumed intention of the parties to the contractual unit, and that the Supreme Court expressly did not overrule or modify the rationale of the Childs and Jumonville decisions. In fact, the court agreed that it could be plausibly deduced from those decisions "that, when the Department of Conservation has issued orders unitizing only a part of land affected by mineral royalty, a division of the royalty is effected and that production from the unit, from a well not situated on any part of the land subjected to the royalty, does not interrupt prescription as to the royalty on the land outside the unit." 117 So.2d 580.
Thus, the Childs and Jumonville Pipe decisions did not apply in the Crown Central v. Barousse situation, not because royalty is a different type of interest than a servitude, but because, the court stated, Crown Central dealt with a voluntary unitization agreement instead of a compulsory commissioner's unit. 117 So.2d 580-581.
So long as the rationale of Childs and Jumonville Pipe is not modified or overruled by the Supreme Court, the court's present majority feels that it is more consistent to hold that the conservation order *49 forming a drilling unit has the same effect of dividing the interests with regard to both mineral servitudes and royalty interests, than to say that an entirely different rule should apply as to the respective interests. It may well be that, as a matter of policy rather than of strict logic, the Supreme Court intended by Crown Central to develop a different rule with regard to the respective types of interests, and perhaps a different rule may be justified; but until the Supreme Court makes that policy choice, we think that Childs and Jumonville Pipe require this court to hold that for present purposes the conservation drilling unit divided the acreage within it from the remainder of the plaintiff landowner's tract. Consequently, production from acreage outside of the plaintiff's tract (although within the unit) did not, for purposes of royalty prescription, constitute production attributable to the portion of the plaintiff's land outside of the conservation drilling unit.
We therefore hold on rehearing that the plaintiff is entitled to cancellation of the royalty interests burdening his tract insofar as the portion of it outside of the commissioner's unit, and we affirm and reinstate the trial court judgment to this effect.
Able counsel for the defendants-appellants further contends that it would be unconstitutional to permit a conservation order of the commissioner to divide the royalty interest to keep part alive by unit production and let part prescribe, because the conservation statute does not grant the commissioner such authority (citing LSA-R.S. 30:4 which sets forth the powers of the commissioner), and also because such will permit the commissioner to exercise judicial powers and to deprive citizens of their property without due process of law.
We fail to see a constitutional issue in such regard. Under his constitutional and statutory conservation powers, the commissioner is entitled to create conservation drilling units, within which limited drilling shall take place, with production to be allocated to all the acreage within the unit no matter on which landowner's tract the producing well shall be located. Hunter Co., Inc. v. McHugh, 202 La. 97, 11 So.2d 495. The commissioner's order was intended only to regulate drilling for conservation purposes, and it was not intended to have administrative effect or jurisdiction beyond the limits of the unitized area. Le Blanc v. Danciger Oil & Refining Co., 218 La. 463, 49 So.2d 855. However, contracts relating to minerals are regarded as written subject to the conservation laws and to any lawful exercise of conservation powers, including the judicially-interpreted effect of same upon property rights. Le Blanc v. Danciger Oil & Refining Co., cited above.

Decree.
For the foregoing reasons, our original decree herein is recalled and set aside; and we now affirm in all respects the judgment of the district court of October 21, 1963 in favor of the plaintiff and against the defendants, and decreeing that defendants' royalty interests had prescribed and ordering cancellation thereof, insofar as affecting or burdening the following described property owned by the plaintiff in Acadia Parish, Louisiana:
The Northwest Quarter (NW/4) of Section 12 and the Southwest Quarter (SW/4) of Northeast Quarter (NE/4) of Section 12, less and except 20.90 acres, more or less, thereof sold by Valin Miller to Conrad Hensgens by deed dated October 19, 1908, bearing File No. 31837, bounded North by Maurice Miller and Peter J. Thevis, Jr., East by Peter J. Thevis, Jr. and Conrad Hensgens, South by Conrad and Karl Zaunbrecher and West by Karl Zaunbrecher; all in Township Eight (8) South, Range One (1) West, Louisiana Meridian, containing 180 acres, more or less. SAVE AND EXCEPT the 26.65 acres of said tract included in the Zaunbrecher Sand Unit in the Grand Coulee Field, established by Order No. 406-A-1 of the Commissioner *50 of Conservation of the State of Louisiana, dated June 25, 1959, effective July 1, 1959, said order and unit plat recorded under number 306689 in Conveyance Book A-19 at Page 162 of the records of Acadia Parish, Louisiana.
The defendants-appellants are cast with all costs of appeal.
Trial court judgment reinstated and affirmed.
FRUGE, J., dissents for reasons in original opinion.
SAVOY, Judge (dissenting).
A royalty interest, like a mineral lease on a single tract, is a single indivisible right. Crown Central Petroleum Corp. v. Barousse, 238 La. 1013, 117 So.2d 575; Montie v. Sabine Royalty Co., (La.App., 3 Cir., 1964), 161 So.2d 118, (writ refused).
In Hunter Co. v. Shell Oil Co., 211 La. `893, 31 So.2d 10, the Supreme Court held that the operations on a Commissioner's unit served to maintain the entire lease in force.
Landowners who do not want the rule of Hunter v. Shell, supra, to apply may so contract in their leases by inserting a "Pugh" clause limiting the effects of unit operations. A landowner selling royalty could do exactly the same thing. If, however, the landowner and royalty purchaser do not want to limit the effect of unit production, as the majority opinion is written, they would be prevented from so contracting.
In the instant case there was no intention to permit the division of royalty and no logical reason to do so.
The present royalty owner did not consent to a division of royalty any more than did the royalty owners in the Crown Central and Montie cases, supra. There is no matter of conservation involved in the payment of royalties as there would be in the creation of a Commissioner's unit. After the establishment of a Commissioner's unit, the mineral owner may still protect the remaining acreage not in the unit.
Stress was laid in the Crown Central case, supra, on the intention of the parties. There is nothing in the royalty deed in the instant case which indicates an intention by the parties to a division of the royalty upon the formation of a Commissioner's unit.
The Commissioner's sole power is that of conservation. He does not have the authority to change the contractual rights of the parties to the royalty deed.
If a Commissioner's order divides a royalty right and a declared unit does not, landowners will not grant pooling leases, thus adding to the already heavy burden of the Department of Conservation.
The majority rely on the cases of Childs v. Washington, 229 La. 869, 87 So.2d 111, and Jumonville Pipe and Machinery Co., v. Federal Land Bank of New Orleans, 230 La. 41, 87 So.2d 721, to sustain their position. However, the last two mentioned cases are distinguishable from the instant case in that in those cases the parties had failed to agree to pool their interests.
Justice Fournet, as the organ of the Court in the Childs case, supra, made the following comments:
"It logically follows, therefore, that if the landowner and the mineral owner can by agreement extend the servitude as to a portion only of the acreage without by such act interrupting the tolling of prescription as to the servitude on the remainder of the tract, as held in Elson v. Mathewes, supra [224 La. 417, 69 So.2d 734], and if the mineral owner can divide the advantages of a servitude by assigning to a third person all of his interest in a designated portion of the land affected by the servitude and create a situation whereby user of a portion would not hold the remainder, as held in Ohio Oil Co. v. Ferguson, supra, [213 La. 183, 34 So. 2d 746], and Byrd v. Forgotson, supra *51 [213 La. 276, 34 So.2d 777], then clearly when the Commissioner of Conservation, acting for the State in the exercise of its police power, by his orders and after due hearing, included within a unit or units portions of a tract as to which owners had failed to agree to pool their interests for development purposes, his act produced the same result as if the parties had formed a drilling unit by convention and for development purposes had reduced the servitude to that extent." (Emphasis added.)
For the reasons assigned herein, I respectfully dissent.
On Application for Rehearing.
En Banc. Rehearing denied.
FRUGE and SAVOY, JJ., are of the opinion that a rehearing should be granted.
NOTES
[1] I.e., one unilaterally declared by the lessee by virtue of lease authorization, see Montie v. Sabine Royalty Co., La. App. 3 Cir., 161 So.2d 118, a recent decision of this court following Crown Central.