FRUGÉ, Judge
(dissenting).
Mindful of the sanctity of contracts, I must disagree with my brothers of the majority in their reversal of the lower court.
*550 ’ It 'is my understanding and interpretation of Jumonville Pipe & Machinery Co., Inc. v. The Federal Land Bank, 230 La. 41, 87 So.2d 721, and Childs v. Washington, 229 La. 869, 87 So.2d 111, that our Supreme Court concluded that the creation of a Commissioner’s unit was to divide from the parent tract the acreage included within such unit for the determining for purposes of the tolling of prescription of land outside.-of the Commissioner’s unit subject to a servitude by contract. In these cases it was held that, “a compulsory pooling order which included part of a tract burdened with a mineral servitude had the effect of dividing the servitude, thus, drilling and production upon the lands included in the unit did not have the effect of interrupting the running of prescription as to the servitude outside of the unit.”
As Justice McCaleb, in his concurring opinion in the Childs case, stated,
“Under ordinary conditions a servitude is a whole right incapable of division. However, as this right may be subordinated to all lawful orders made in the interest of conservation, the conclusion appears inescapable that, when drilling units are established embracing a portion of the area subject to the servitude, its area is reduced by operation of law and the area lying within the drilling units excluded therefrom as long as the unitization order remains in effect."
The defendants based their entire argument on the fact that the unit well drilled in 1956 was physically located on the parent tract in the D-l and “A” Sand Unit. Of course this argument is logical, for if the unit well was drilled on any tract of the Commissioner’s unit other than the tract or tracts of the parent tract, the factual situation would have been too similar to the Childs and Jumonville cases.
'. However, the physical ■ location of the unit well should make no difference whatsoever in the results, as the location of the unit well on the unit is irrelevant to the tract participating therein. The irrelevancy of the location of the unit well has been legislatively established by Louisiana R.S. 30 :- 10, subd. A(l) (b), which provides that production from any well in a unit is considered as produced from a well located on each tract of the unit.
It is my interpretation of the Jumonville and Childs cases that our Supreme Court meant that the contractual servitude was reduced by the establishment of the unit by the Commissioner of Conservation only on that portion encompassed by the Commissioner’s order, when it said,
“that since landowner and mineral owner can by agreement extend the servitude as to a portion only of the acreage without by such act interrupting the tolling of the prescription as to the servitude on the remainder of the tracts * * *, then the Commissioner of Conservation, acting for the State in the exercise of its police power * *, when the owners have failed to agree to pool their interests, * * * produce the same results as if the parties had formed a drilling unit by convention and for development purposes had reduced the servitude to that extent.”
The purposes of the State’s mineral conservation laws are to protect, conserve and replenish the natural resources this state has, and the prevention of waste or wasteful use of our natural resources.
R.S. 30:9(C) reads as follows:
“The commissioner of conservation shall consider all available geological and engineering evidence and shall provide for the unit well to be located at the optimum position in the drilling unit for the most efficient and economic drainage* of such unit with such exceptions as may be reasonably necessary where topographical conditions exist that would make such a location of the unit well unduly burdensome or where the designated unit well was drilled or *551 commenced prior to the creation of the drilling unit; provided, however, the commissioner of conservation shall fix the well location for each drilling unit so that the producer thereof shall be allowed to produce no more than his just and equitable share of the oil and gas in the pool, as this share is set forth in this Section. As amended Acts 1960, No. 442, § 1.”
Following this section of the Revised Statutes, the Commissioner of Conservation, by Order No. 447-447B, established the unit in question in order to insure maximum recovery and avoidance of waste. The well designated as D-l and “A” Sand Unit was spudded in to drain the area designated in the above order, and that area only. Thus, by statute the Legislature has authorized, and the Supreme Court has affirmed, that when the Commissioner designates an area to be unitized, it is from that unit, and only that unit, that the minerals are drained.
. The parent tract encompasses 340.10 acres of land, while the Commissioner’s unit encompasses only 93.5 acres of that parent tract. If the majority’s opinion is correct, then the dry hole drilled on less than one-third of the parent tract has interrupted prescription on the whole 340.10 acres, thus defeating the “traditional civilian policy of restrictively interpreting interests which limit the full ownership of property and its free flow in commerce, a land policy which in Louisiana mineral jurisprudence has evidenced itself by its thrust towards freeing the land owner by prescription of dormant mineral interests affecting his title.” Daggett, Louisiana Mineral Rights (revised edition 1949), 16, 54, 264, 267.
Accordingly, I respectfully dissent