CULPEPPER, JUDGE.
This is a .concursus proceeding filed by Trunkline Gas Company, et al., depositing in the registry of the court proceeds derived from the sale of gas and distillate from two producing wells drilled in the Grosse Isle Field. At issue is the owership of one-half of the minerals in a contiguous tract of land containing approximately 340 acres. Portions of this 340-acre tract are included in the two conservation commissioner’s drilling units on which the two producing wells were drilled in about 1960.
Two opposing groups claim this mineral interest. The Daisy Steen Morgan group claim by virtue of the purchase of a one-half mineral servitude from the landowner in 1949 (hereinafter referred to as the 1949 servitude), and contend that ten years prescription for non-use was interrupted by the drilling of a dry hole on the 340-acre tract itself in 1956. The J. Wesley Steen group contends the 1949 servitude has prescribed and reverted to the landowner, and that the landowner conveyed this one-half mineral interest to them in 1959. They argue that the 1956 well did not interrupt prescription, 1 except as to a 96-acre portion which was included in a 320-acre drilling unit, created by the commissioner of conservation, and on which 96-acre part the 1956 well was drilled. They contend prescription was not interrupted as to that portion of the 340-acre parent tract located outside the 1956 drilling unit.
There is no dispute as to the facts. They were stipulated.
However, these facts present a legal question which is res nova in the appellate courts of Louisiana. Simply stated, that issue is: Where a drilling unit is created by order of the Commissioner of the Department of Conservation and a tract of land burdened with a mineral servitude is located partly within and partly without the drilling unit does a unit well drilled on the part in the unit, interrupt prescription as to the entire mineral servitude, both *548 within and without the unit? Although the issue is res nova, there are several cases enunciating principles of law which lead to the conclusion that in this factual situation the drilling of such a well does interrupt prescription as to the entire tract. For a general discussion of the problems involved, see George W. Hardy, III, Ruminations on the Effect of Conservation Laws and Practices on the Louisiana Mineral Servitude and Mineral Royalty, 25 La.L.Rev. 824 (1965).
The first case which we deem it appropriate to discuss is Childs v. Washington, 229 La. 869, 87 So.2d 111 (1965). There the facts differed from the present case in that the unit well was a producer and was not located on that part of the parent tract included in the commissioner’s drilling unit. Our Supreme Court held that the unit well did not interrupt prescription as to that part of the parent tract located outside the commissioner’s unit. We note particularly the rationale of Justice McCaleb’s concurring opinion, reading in part as follows:
“While it can hardly be gainsaid that the extraction of oil from the portion of the encumbered land contained in the drilling units constituted a user of the servitude in a real sense, it was only because of the unitization orders that this user was effective in law forasmuch as no drilling explorations were ever conducted on any part of the land subject to the servitude. This being so, it seems only proper to conclude that interruption of prescription extends only to that portion of the land covered by the servitude from which the oil is actually withdrawn or where the user has taken place — that is, the part included within the drilling unit.
“Under ordinary conditions a servitude is a whole right incapable of division. However, as this right may be subordinated to all lawful orders made in the interest of conservation, the conclusion appears inescapable that, when drilling units are established embracing a portion of the area subj ect to the servitude, its area is reduced by operation of law' and the area lying within the drilling units excluded therefrom as long as the unitization order remains in effect.” (Emphasis ours.)
Jumonville Pipe and Machinery Co. v. Federal Land Bank, 230 La. 41, 87 So.2d 721 (1956) involved substantially the same facts as the Childs case. The court again was careful to point out that the unit well was not on the land subject to the servitude; and that whatever effect the unit well had on the mineral servitude was solely by virtue of the orders of the Commissioner of Conservation. The court reasoned that since these orders covered only a part of the parent tract, the effect of the order should be limited to the land within the unit. In Jumonville the court also added this observation:
“As stated by the trial judge, the issuance of the orders by the Commissioner of Conservation did not result — (1) in the creation of any obstacle which prevented the Federal Land Bank of New Orleans, or any other interested party, from using in the area lying outside the drilling units the servitude in the manner contemplated by the reservation, or (2) have the slightest effect upon their right to do so.”
Crown Central Petroleum Corporation v. Barousse, 238 La. 1013, 117 So.2d 575 concerned the accrual of royalty prescription as to part of a parent tract outside a contractual drilling unit, voluntarily formed. There, our Supreme Court held the formation of this voluntary unit did not have the effect of dividing the royalty interest inside and outside the unit. In this situation, where no compulsory commissioner’s unit was involved, the court decided the case on the basis of the presumed intention of the parties involved and general principles of the law of contracts. The Crown Central Petroleum Corporation case was recently followed by this court in a similar factual situation. Montie v. Sabine Royalty Compa *549 ny, 161 So.2d 118 (La.App. 3rd Cir. 1964, writs refused).
The most recent case on the effect of compulsory drilling units, created by the Commissioner of Conservation, is Frey v. Miller, 165 So.2d 43 (La.App. 3rd Cir. 1964), writ refused at 246 La. 844, 167 So.2d 669. That case involved royalty, rather than a mineral servitude, and, as in the Childs and Jumonville cases, the unit well was drilled off the parent tract. A majority of this court considered it more consistent with the Childs and Jumonville cases to hold that the drilling of an off-premises well, in a compulsory commissioner’s unit, interrupts prescription of royalty only as to that part included in the drilling unit. The rationale of this decision is again that it was only because of the unitization orders that any rights of the royalty owners in question were affected. Hence interruption of prescription should extend only to that portion of the land included within the drilling unit.
Although, on refusal of writs by the Supreme Court in Frey v. Miller, 246 La. 844, 167 So.2d 669 (1964), both Chief Justice Foumet and Justice Sanders dissented, the result which we have reached here is consistent with both the dissents and the maj ority ruling. The substantial reasoning of Chief Justice Fournet’s dissent is that royalty owners are not in any way affected by a compulsory commissioner’s unit; they do not have the right to drill or use the minerals; and they are limited to receiving a share of any production secured. The Chief Justice argues that “private contracts involving mineral rights are only superseded when they are in conflict with the valid orders of the Commissioner of Conservation, i. e., when the order is a conservation measure, pure and simple.” (Emphasis ours) The converse of this argument is that where rights under private contracts involving mineral interests are not in conflict with a commissioner’s order, then these contracts should be given effect as if no commissioner’s order had ever existed.
From a consideration of the cases cited above, as well as other authorities referred to therein, it is obvious that the difficult problems considered resulted solely from a conflict between the conservation law and private contracts. The cases discussed above deal with problems arising where private contracts involving mineral interests are affected only because they are contained within a compulsory commissioner’s unit, i. e., where the unit well was not on the property subject to the mineral servitude or royalty. If prescriptive rights, under private contracts involving mineral interests, are affected regardless of whether the compulsory commissioner’s unit ever existed or not, and are not in conflict with the unit-ization order, then we think such a commissioner’s order should have no effect on the prescriptive rights involved.
Thus, in the present case, if there had been no compulsory commissioner’s unit in existence, the well drilled in 1956 on the part of the parent tract, clearly would have interrupted 10 years prescription as to the entire tract. The commissioner’s order was not in conflict with these private contractual rights and should have no effect thereon.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment herein in favor of Mrs. Daisy Steen Morgan and Mrs. Myrtle Steen Robertson, decreeing them to be the owners of the one-half mineral servitude in question, created by instrument dated June 22, 1949, as described in the judgment appealed ; as well as the funds on deposit with the clerk of court in connection with this con-cursus proceeding. All costs in the lower court, as well as the costs of this appeal, are assessed against the appellees.
Reversed and rendered.