SUMMERS, Justice
(dissenting).
The Court of Appeal has succinctly stated the issue of this case to be: “Where a drilling unit is created by order of the Commissioner of the Department of Conservation and a tract of land burdened with a mineral servitude is located partly within and partly without the drilling unit does a unit well drilled on 'the part in the unit, interrupt prescription as to the entire mineral servitude, both within and without the unit?” 179 So.2d 546.
The trial court held that the drilling was only a user'of that portion of the servitude within the unit and that prescription was not interrupted as'to the portion of the servitude outside the unit. The Third Circuit Court of Appeal reversed, and thé majority of this court, I think erroneously,'■'affirms the Court of Appeal holding' that drilling on the servitude tract within the unit interrupts prescription as to the entire servitude, both within and without the unit.
.Thirteen years .ago this court, while .recognizing the indivisibility of mineral servitudes when its application was sound, held in clear and unequivocal language that there was no legal prohibition against division of the servitude by contract between the original parties to its creation. Elson v. Mathewes, 224 La. 417, 69 So.2d 734 (1953). See Daggett, Brief Comment and Speculation re Elson v. Mathewes, 14 La.L.Rev. 547 (1954). No dissenting voice is recorded in connection with this decision.
*543 In Childs v. Washington, 229 La. 869, 87 So.2d 111 (1956) and in Jumonville Pipe and Machinery Co., Inc. v. Federal Land Bank of New Orleans, 230 La. 41, 87 So.2d 721 (1956), decided three years later, this court- held that the creation of a forced unit including part only of a tract burdened with a servitude, effected a “reduction” thereof for development purposes, with the result: that prescription continued to accrue as to the portion of the servitude outside the unit.[1]
Though these decisions were criticized in some quarters, even the critics recognize this has been the state of the law for ten years.[2] See Frey v. Miller, 165 So.2d 43 (La.App.1964) cert. denied. I am not convinced that there is a sound basis for overturning this jurisprudence, and surely the majority opinion provides none. Accordingly I dissent.'
I would adhere to the law announced in the Childs and Jumonville cases. The slender thread upon which departure from these decisions hangs in the case at bar is the factual happenstance that in the Childs and Jumonville cases the well was drilled within the unit but off of the servitude tract; whereas, in the case at bar the well was drilled on the servitude tract.
But there is no reason to attribute different results to wells drilled within the unit simply because of their location. Location of wells within drilling units is determined by the Commissioner of Conservation after considering all available geological and engineering evidence. It is required to be in the optimum position for the most efficient and economic drainage of the unit. R.S. 30:9C. The location — it is plain to see— has no relation to the servitude tract as such. The owner of the servitude has not selected the location of the well and the coincidence that it falls on the servitude tract should have no different effect than if the location fell elsewhere in the unit. A user of the servitude occurs with equal effect in each instance. R.S. 30:10A (1) (b). Division of the production in each instance is on the basis of the proportion which the-acreage of the individual tract in the unit bears to the total acreage in the unit. As a drilling unit means the maximum area which may be efficiently and economically drained by one well. (R.S. 30:9B), the effect of the order of the Commissioner is confined to the area drained by the well in the unit and it could not apply to any portion of the servitude tract outside the unit. Hence there was no user, constructive or actual, outside the unit. My *545 view is that it is error to give any extraterritorial effect to orders of the Commissioner.
The specter has been raised that it is an unconstitutional invasion of the contractual rights acquired by the owner of the servitude to deny that drilling on that part of the servitude tract within the unit interrupts prescription running against the entire servitude including that portion outside the unit. Rather, I assert, it is an unconstitutional application of the authority of the orders of the Commissioner and an invasion of the rights of the landowner to permit the drilling of a well within a unit to have the effect of interrupting prescription on that part of the servitude outside the unit. The law does not contemplate that these orders shall have effect outside the units. The orders create no obstacle to the free use of the servitude outside the unit, and they should have no effect on the tolling of prescription outside the unit. See Ohio Oil Co. v. Kennedy, 28 So.2d 504 (La.App.1946).
As we observed recently in Mire v. Hawkins, 186 So.2d 591 (on the docket of this court), the Commissioner’s order has simply modified the user rights of the servitude owner. In this case that would mean that a unit well, though on the servitude tract, would have no effect on the servitude outside the pnit.
I respectfully dissent.

. McCollam, Jr., Recent Jurisprudence I— Mineral Servitude and Mineral Royalty, Twelfth Annual Institute on Mineral Law 105, 106, La.St.Univ.Press (Hardy ed. 1965).

. Comment, Tlie Effect of Unitization on the Duration and Extent of Mineral Interest in Louisiana, 36 Tul.L.Rev. 769, 775 (1962).
Doyle, Division of the Servitude, 5 La. Bar Jo. 138 (1957).